**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**John William DEHMER, Defendant–
Appellant.**

**No. 94CA1178.**

Colorado Court of Appeals,
Div. V.

March 21, 1996.

Rehearing Denied May 2, 1996.

Certiorari Denied Feb. 18, 1997.

David F. Vela, Colorado State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

In this consolidated appeal, defendant, John William Dehmer, appeals the judgments of conviction entered following two trials to the court in which he was found guilty of one count of second degree assault and one count of first degree possession of contraband (first trial) and one count of second degree assault (second trial). Defendant contends that in both cases the trial court erred by denying his pre-trial motion to dismiss based on alleged violations of his statutory and constitutional rights to confer privately with counsel. In both cases defendant also appeals the denial of his motion to dismiss for alleged violations of his rights under the Uniform Mandatory Disposition of Detainers Act (the UMDDA). We affirm.

## I.

Defendant first contends that the trial court erred by denying his motion for dismissal. The basis of defendant's motion was his contention that his statutory and constitutional rights to consult with his attorney in a private setting before trial had been violated. The trial court denied defendant's motion based on its findings that: (1) no breach or invasion of the attorney-client relationship had occurred; (2) defendant had adequate opportunities for confidential visitation with his attorney; and (3) defendant had failed to show that he was prejudiced by any visitation which had taken place in a non-confidential prison facility. We perceive no error in the trial court's ruling.

## A.

While serving a sentence in a Department of Corrections prison, defendant was charged on September 28, 1993, with one count of second degree assault, one count of first degree possession of contraband, and two habitual criminal counts. The next day, defendant was charged with one count of second degree assault and two habitual criminal

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Laurie A. Booras, Assistant Attorney General, Denver, for Plaintiff–Appellee.

counts. The court appointed counsel to represent defendant in both cases.

On November 16, 1993, an investigator working on behalf of defense counsel met with defendant at the prison. The next day, defense counsel and the investigator together met with defendant at the prison. Both meetings with defendant were conducted in the prison's single attorney-client visitation room. The room was enclosed with glass on the upper portions of all sides such that an outside observer could see inside. Prison officials had positioned a video camera approximately six to eight feet away from the glass walls and focused on the seat in the room designated for defendant. Although defense counsel and the defense investigator both requested a more private meeting room and asked that the camera be removed or turned off, prison officials refused.

At the second meeting the defense investigator stood to block the video camera from recording defendant's face, but prison officials directed him to sit down. Defense counsel then instructed defendant to cover his mouth when speaking and not to gesture.

Defendant filed a motion to obtain the videotape of the second meeting, a motion to prevent prison officials from disclosing any information obtained from observing the meeting, and a motion to transport defendant to the courthouse to conduct a private attorney-client interview.

A hearing was held on defendant's motions. The prison warden testified that the video camera did not record sound, but that it was possible that prison guards standing nearby the attorney-client visitation room might be able to overhear a person speaking loudly in the room. The warden explained that the video camera and the glass-walled room were both installed for prison security reasons. The court took the motions under advisement and allowed defense counsel to meet with defendant in private at the courthouse at the conclusion of the hearing.

Defendant filed a second motion seeking another attorney-client conference at the courthouse. That motion was granted and, on December 22, 1993, defendant met in complete privacy with his attorney and investigator for approximately two to three hours. During that meeting the three worked at preparing for defendant's two trials. Neither defendant nor defense counsel expressed any dissatisfaction with the privacy of the location provided for that meeting.

At a January 1994 hearing, the court concluded that, as to defendant, the prison's policy of video taping attorney-client conferences was unlawful, but that no evidence had been obtained as a result of the intrusion. The court refused to order further visitation at the courthouse, expressing the belief that it was the responsibility of the Department of Corrections to provide a private meeting area.

In February 1994, defendant filed a motion to dismiss charges in both cases alleging interference with the attorney-client relationship in violation of his constitutional and statutory rights. In connection with that motion, on April 27, 1994, defendant filed another motion seeking a confidential attorney-client meeting. On April 28, 1994, the court entered an order which noted that defendant's motions were based on the November 1993 meeting. The court thus directed defense counsel to attempt a private meeting at the prison to determine if a confidential visitation area had since been made available.

At a May 19, 1994, hearing on defendant's motion to dismiss, defense counsel testified that the defense investigator had been to the prison in early January 1994, and at that time visitation conditions had remained unchanged. Defense counsel presented no evidence indicating that he had attempted to visit defendant at the prison after the court's April 1994 order.

On May 27, 1994, the court issued an order denying defendant's motion to dismiss. The court reasoned that, because no conversations at the prison had been recorded or overheard, and because defendant had attended a private meeting with counsel at the courthouse on December 22, 1993, as well as before and after each court hearing, defendant had failed to show any prejudice resulting from the lack of privacy at the prison's visitation facility.

## B.

█ Defendant first asserts that he was entitled to dismissal because his statutory rights under § 16–3–403 and § 16–3–404, C.R.S. (1986 Repl.Vol. 8A) were violated.

Section 16–3–403 provides:

Any person committed, imprisoned, or arrested for any cause, whether or not such person is charged with an offense, shall be allowed to consult with an attorney-at-law of this state whom such person desires to see or consult, alone and in private at the place of custody, as many times and for such period each time as is reasonable. Except where extradition proceedings have been completed or are not required by law, when any such person is about to be moved beyond the limits of this state, the person to be moved shall be entitled to a reasonable delay for the purpose of obtaining counsel and of availing himself of the laws of this state for the security of personal liberty.

Section 16–3–404 provides:

(1) All peace officers or persons having in custody any person committed, imprisoned, or arrested for any alleged cause shall forthwith admit any attorney-at-law in this state, upon the demand of the prisoner or of a friend, relative, spouse, or attorney of the prisoner, to see and consult the person so imprisoned, alone and in private, at the jail or other place of custody, if such person so imprisoned expressly consents to see or to consult with the attorney.

(2) Any peace officer or person violating the duty imposed by this section or section 16–3–403 shall forfeit and pay not less than one hundred dollars nor more than one thousand dollars to the person imprisoned or to his attorney for the benefit of the person imprisoned, to be recovered in any court of competent jurisdiction.

We, like the trial court, reject the People's argument that the facilities provided for defendant to consult with his attorney at the prison satisfied these statutory privacy requirements. However, that conclusion does not end our inquiry.

The only remedy specified for a violation of either statutory section is imposition of a fine for the benefit of the aggrieved prisoner. Nothing in the language of either section indicates that dismissal of a criminal case is an available remedy, and no decision has ever interpreted either section to provide for such extraordinary relief.

█ The language of the two sections does not confer a statutory right to private attorney-client consultation which is broader than the corollary constitutional right. *See Wright v. State*, 250 Ga. 570, 300 S.E.2d 147 (1983) (Sixth Amendment right to counsel requires that prisoner be provided visitation with counsel in an area where private conversation is possible).

Therefore, even if we assume for purposes of analysis that the possible remedies for a statutory violation are as broad as those available under the federal constitution, the same standards govern our review of a trial court's ruling denying dismissal. Accordingly, we analyze the two claims together applying constitutional standards.

## C.

█ An incarcerated criminal defendant awaiting trial has a Sixth Amendment right to counsel which includes the right to consult with counsel in an area where private conversation is possible. *See Wright v. State, supra.*

As defendant correctly asserts, numerous courts have enforced this right through injunctive relief and habeas corpus orders directing jail or prison authorities to provide adequate facilities. *See, e.g., Case v. Andrews*, 226 Kan. 786, 603 P.2d 623 (1979) (habeas action ordering that sheriff allow attorneys to cover television camera lens in order to prevent visual observation of attorney-client conferences). However, we are aware of no decision in which, without a finding of actual prejudice, a court has reversed a conviction, ordered a new trial, or dismissed criminal charges as a remedy for a Sixth Amendment claim predicated solely upon an allegation that an incarcerated defendant was not provided a sufficiently private attorney-client consultation facility.

■ Only when state interference with a criminal defendant's access to counsel results in a total deprivation of the right to counsel is a showing of prejudice not required. *See Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (no showing of prejudice required when defendant was prevented from consulting his attorney during a mid-trial overnight recess). No such deprivation is alleged here.

■ A showing of prejudice is required even when a defendant is asserting a Sixth Amendment claim challenging an actual intrusion upon the attorney-client relationship. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). In *Weatherford,* an undercover law enforcement agent posing as a co-defendant had attended the defendant's attorney-client trial preparation sessions. Nevertheless, the Supreme Court ruled that no Sixth Amendment violation had been established because the undercover agent had not communicated any information from the meetings to the prosecution. It further held that, in order to establish a Sixth Amendment violation, criminal defendants must demonstrate that they were prejudiced by governmental intrusion upon confidential attorney-client conversations. In so ruling, the Court emphasized the fact that the intrusion upon the attorney-client relationship was the incidental result of the government's legitimate need to maintain the undercover agent's false identity and not the result of an intention to learn defense strategy or confidential communications.

Some courts have relied on *Weatherford's* discussion of the government's intent to conclude that no showing of prejudice is required if the government *purposefully intrudes* upon the attorney-client relationship without a legitimate purpose in order to obtain an impermissible advantage. *See, e.g., Shillinger v. Haworth,* 70 F.3d 1132 (10th Cir.1995) (prejudice presumed where a deputy present for security during attorney-client meetings communicated substance of meetings to prosecution). However, those cases recognize that a showing of prejudice is always required by *Weatherford* where the government intrudes upon confidential attorney-client discussions while acting with a le-

gitimate purpose. *Shillinger v. Haworth, supra.*

In the *Weatherford* decision and in those cases which have distinguished it on the basis of the government's intent, the type of intrusion at issue involved some type of actual interception of confidential attorney-client communications. *See Weatherford v. Bursey, supra* (informant overheard substance of attorney-client conversations); *Shillinger v. Haworth, supra* (security deputy overheard defense attorney tell defendant the questions he would be asked at trial and also heard attorney and client discuss the defendant's responses); *see also* 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.8 (1984) (analyzing applicability of *Weatherford's* prejudice requirement with reference to the reason for the "invasion" of attorney-client communications).

■ Applying these principles here, we conclude the defendant did not suffer from an actual intrusion upon the attorney-client relationship, legitimately motivated or otherwise. And, because his constitutional claim is based upon an alleged violation of his Sixth Amendment right to a sufficiently private attorney-client consultation facility, he must demonstrate actual prejudice in order to prevail. Accordingly, we next review defendant's claim of prejudice.

### D.

■ Defendant asserts that the prison visitation facility impaired his attorney-client relationship because he was not free to use physical gestures to communicate with his attorney. In addition, defendant argues that he had to cover his mouth while speaking to his attorney in order to conceal his lip movements from the guards and the video camera. Defendant alleges that, as a consequence, it was necessary for him to speak louder and risk being overheard.

However, the record is clear that the video camera did not generate an audio recording, and there is no evidence in the record suggesting that any of defendant's conversation was overheard by prison guards. Likewise, no evidence in the record indicates that defendant's lip movements actually were ob-

served by anyone able to discern the substance of his statements. In short, no evidence was obtained as a result of the lack of privacy. *But cf. People v. Harfmann,* 38 Colo.App. 19, 555 P.2d 187 (1976) (evidence obtained by means of a surreptitious observation of an attorney-client meeting in jail cannot be used against attorney in prosecution for introduction of contraband).

Therefore, because no communication was overheard or recorded, defendant's assertion of prejudice depends entirely upon his claim that his attorney-client relationship was compromised by his concern that such a breach of confidentiality might occur. The record does not support such a claim.

The factual allegations giving rise to the charges in both cases were straightforward. In the first case, defendant was accused of stabbing another prisoner and possessing a weapon. In the second case, defendant was accused of biting a prison guard. The evidence of guilt in both cases was overwhelming. Further, defense counsel made no assertion that he was unprepared for trial because of an inadequate opportunity to confer with defendant in private.

To the contrary, the trials in both cases were conducted to the court apparently for the sole purpose of allowing defendant to obtain the functional equivalent of a plea bargain while at the same time preserving his right to appeal the court's dismissal rulings. Defendant stipulated that the trial court could consider all evidence introduced in the preliminary hearing in determining his guilt, both parties waived opening statements and closing arguments, neither party presented additional evidence or witnesses, the prosecution dismissed two habitual criminal counts in both cases, and the court conducted the trial with the understanding that the parties had stipulated to an eight-year sentence on the two cases (concurrent to one another and consecutive to all other sentences).

Defendant does not assert that his consent to this procedure was in any way motivated by defense counsel's unpreparedness for trial. While this unusual trial procedure did preserve defendant's right to appeal the court's rulings denying his motions to dismiss in May 1994, it also established that he was not prejudiced at trial by inadequate opportunities for confidential attorney-client meetings.

Accordingly, we affirm the trial court's ruling denying defendant's motion to dismiss on this ground.

### II.

■ Defendant next contends that the trial court erred in denying his motion to dismiss for an alleged violation of his rights under the UMDDA. Again, we disagree.

Defendant filed a request for speedy disposition of detainers on August 9, 1993. However, charges were not filed against defendant in these cases until September 28, 1993, and September 29, 1993. Nevertheless, defendant argues that his premature UMDDA request was rendered operative by the later filing of charges so that the UMDDA's 90-day limitation period set forth in § 16-14-104, C.R.S. (1986 Repl.Vol. 8A) ran from the day charges were filed. We are not persuaded.

■ A prisoner's right to invoke the UMDDA's procedural protection depends on the existence of formal charges at the time the UMDDA request is filed. Therefore, a petition for a speedy disposition that predates the filing of an indictment, information, or complaint is a nullity with no legal effect on subsequently filed felony charges. *People v. Calhoon,* 897 P.2d 855 (Colo.App.1994).

Accordingly, the trial court correctly rejected defendant's claim for dismissal under the UMDDA.

Judgment affirmed.

TAUBMAN and CASEBOLT, JJ., concur.