# IN THE SUPREME COURT OF IOWA

No. 14–0831

Filed February 19, 2016

**STATE OF IOWA,**

Appellee,

vs.

**RANDALL LEE LAMOREUX,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Hancock County, DeDra L. Schroeder (suppression hearing) and Gregg R. Rosenbladt (trial), Judges.

The State requests further review of a decision of the court of appeals reversing the denial of a motion to suppress the defendant's chemical test result. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant.

Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, David C. Solheim, County Attorney, for appellee.

**MANSFIELD, Justice.**

After being arrested, the defendant phoned an attorney and consulted with that attorney in a jail booking room. The room had visible audio and video monitoring. The attorney was aware of the audio and video systems and took no steps to disable them or request another room. We are asked to decide whether Iowa Code section 804.20 (2013) provides relief to the defendant under these circumstances.

We conclude the defendant is not entitled to suppression of evidence obtained following this attorney–client meeting. For the reasons discussed herein, we find that neither the language of the statute nor this court's prior interpretations of section 804.20 support such an outcome. Accordingly, we vacate the decision of the court of appeals that reached a different result, and affirm the defendant's conviction and sentence.

## I. Background Facts and Proceedings.

At around 11:30 p.m. on May 24, 2013, the Hancock County Communications Center received a report from a woman that her ex-boyfriend Randall Lamoreux was following her vehicle on the main highway from Britt to Crystal Lake, had swerved several times, and had tried to run her off the road. She gave a description of Lamoreux's vehicle—a red Dodge Ram pickup. Dispatch reported this information to three sheriff's deputies at around 11:30 p.m., and they drove toward the location. Meanwhile, a call came in from another person who reported Lamoreux had been involved in a dispute at this person's house, after which Lamoreux climbed into his pickup truck, spun its wheels on the gravel, and left heading south on the main road between Britt and Crystal Lake.

Two of the deputies encountered Lamoreux's pickup on this road. Lamoreux proceeded at that point to turn down a side road. A third deputy was positioned on that road in his stopped patrol car. Lamoreux nearly hit the third deputy's patrol car as he unsuccessfully attempted to drive around it. One of the other deputies, Jason Pischke, reached Lamoreux's stopped pickup and pulled Lamoreux from its cab. Because of Lamoreux's known previous criminal history, Deputy Pischke viewed him as a safety risk requiring immediate removal from his vehicle and handcuffing.

Upon looking inside Lamoreux's vehicle, Deputy Pischke saw an open "tall boy" can of beer on the driver's side of the car. He picked it up and noted it was half full and cold to the touch. Due to the rainy conditions, Deputy Pischke took Lamoreux to his patrol car for further questioning. At that time, Deputy Pischke noticed a strong odor of an alcoholic beverage emanating from Lamoreux and that his speech was slurred and his eyes were red and watery. Deputy Pischke asked Lamoreux if he had been drinking, and Lamoreux responded that he had been drinking tall boy cans of beer before driving. Deputy Pischke administered a horizontal-gaze nystagmus test, which indicated that Lamoreux was intoxicated. Because of Lamoreux's previous hip injury, Deputy Pischke did not ask him to perform further field sobriety tests. Lamoreux did furnish a preliminary breath sample, which showed a blood alcohol level greater than .08.

Just after midnight on May 25, Lamoreux was transported to the Hancock County law enforcement center and placed in the booking room. Deputy Pischke read Lamoreux his *Miranda* rights and informed him of his right to call a family member or attorney pursuant to Iowa Code section 804.20. Deputy Pischke remained with Lamoreux while he made

a series of ten to fifteen calls to attorneys and family members. At 1:09 a.m., Lamoreux connected with Ted Hovda, a local attorney. Hovda arrived at the jail at 1:25 a.m. He went straight into the booking room to meet with Lamoreux, and the door was shut behind him.

For security reasons, the booking room is equipped with a camera and a microphone that record automatically.[1] The camera is linked into the network of cameras at the jail. Both items are visible to people sitting in the room. It is possible to turn off the microphone by flipping a switch. At the suppression hearing, Deputy Pischke testified,

> Q. . . . . Have you observed Ted Hovda meet with potential clients or folks who are in trouble in the booking room before? A. Yes, Ted does a lot of work at our jail and the courthouse.
>
> Q. Have you seen him activate or deactivate the recording system, the audio recording system? A. . . . . Yes, I've seen him disable it.
>
> Q. What does Ted do to disable it? A. You just walk in the booking room and you can turn the switch on the microphone off.
>
> Q. Does he need to ask you to do that? A. No, he does not.
>
> Q. He can do that all on his own? A. Yes.
>
> Q. On this night, did he request specifically to you to meet with his client in private? A. He did not.
>
> Q. But was it your understanding that he was there to meet with Mr. Lamoreux? A. Yes.
>
> Q. And did he turn off the audio recording when you went into the booking room? A. He did not.

---

[1]In addition to the booking room, the law enforcement center has an interview room, which likewise contains video and audio equipment. Some rooms are not connected to the video and audio system. These include the sheriff's deputies' office and a kitchenette. These rooms, however, are not generally available for use by clients and attorneys.

Q. But he could have? A. Yes.

Q. Was he given an opportunity to meet face-to-face with Mr. Lamoreux? A. In our booking room, yes.

. . . .

Q. Was there anybody else in the room? A. There was not.

. . . .

Q. How big is the microphone that's located in the booking room? A. It's probably 12 to 14 inches maybe in size.

. . . .

Q. Would it have been visible to [Lamoreux]? A. Yes.

Q. Where is the on/off switch located? A. On the top of the device.

Q. Is the video camera also visible to people sitting in the room? A. Yes, it is.

Q. Did Mr. Lamoreux ever request that he be allowed to meet somewhere other than the booking room? A. He did not.

Q. Did Mr. Hovda? A. He did not.

Following this meeting with Hovda, Lamoreux was given the implied consent advisory and agreed to undergo chemical testing of his breath. Lamoreux provided a breath sample at 1:42 a.m., which showed an alcohol concentration of .136.

On June 5, Lamoreux was charged by trial information with operating while intoxicated (OWI) third offense, a class "D" felony. *See* Iowa Code § 321J.2(2)(*c*). He filed a motion to suppress the Datamaster result, alleging among other things a failure to honor his rights under Iowa Code section 804.20. Following an evidentiary hearing at which Deputy Pischke testified, the district court denied Lamoreux's motion. The court explained in its ruling:

[*State v. Walker*, 804 N.W.2d 284 (Iowa 2011),] specifically states that law enforcement should honor *attorney requests* . . . for private, barrier-free meeting rooms. The Court notes that *upon request* . . . video and audio recordings should be turned off during consultation. No such requests were made by either Defendant Lamoreux or his counsel during this consultation. Mr. Ted Hovda, Lamoreux's attorney at arrest, was well familiar with the jail facility and had been there on numerous occasions. In the past, Mr. Hovda had shut off the audio recording device in the meeting room when he felt it necessary. The microphone was not hidden. The video camera was in plain sight.

In addition, law enforcement was aware of a violent criminal history for this Defendant, despite the fact that this Defendant had behaved appropriately following this stop before the Court under this cause. Law enforcement was aware of Defendant's previous criminal history, including assaults, alcohol issues, and the fact that Defendant had [previously] been in prison for assaultive behavior.

The State does not seek to use either audio or video recordings of this consultation against the Defendant, nor would that be allowed.

For these reasons, Defendant's Motion to Suppress relating to violations of section 804.20 is denied.

Lamoreux's case proceeded to trial. On February 27, 2014, the jury returned a guilty verdict. The court entered judgment on the verdict and imposed a five-year indeterminate sentence. Lamoreux appealed, arguing the district court erred in denying his motion to suppress.

We transferred the case to the court of appeals. The court of appeals reversed and remanded, reasoning,

[I]n the absence of any individualized showing of a safety or security risk, once Lamoreux invoked his right to consult with an attorney, and his attorney was there in person, the State was required to provide Lamoreux the opportunity to "see and consult confidentially," "alone and in private." Iowa Code § 804.20. He was not required to make a specific request not to be subject to audio or video recording.

The State filed an application for further review, which we granted.

## II. Standard of Review.

We review a district court's interpretation of Iowa Code section 804.20 for errors at law. *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). We will affirm the district court's ruling on a motion to suppress if "the court correctly applied the law and substantial evidence supports the court's fact-finding." *Walker*, 804 N.W.2d at 289.

## III. Analysis.

We must determine whether Lamoreux's section 804.20 rights were violated through the presence of an active audio and video system in the room where Lamoreux met to consult with his attorney when neither he nor the attorney requested the system be turned off or asked for a different room. Iowa Code section 804.20 provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. *An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay.* A violation of this section shall constitute a simple misdemeanor.

(Emphasis added.)

In interpreting section 804.20, "our primary goal is to give effect to the intent of the legislature. That intent is evidenced by the words used in the statute . . . . In the absence of legislative definition, we give words their ordinary meaning." *Walker*, 804 N.W.2d at 290 (quoting *Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011)). "We seek a reasonable

interpretation which will best effectuate the purpose of the statute . . . ." *Id.* (quoting *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 1995)). We also deem it important to place the statute's words in context. *See Robinson*, 859 N.W.2d at 486–87 (concluding that despite language that "seems to suggest a broad application," section 804.20 read in context applies only "to the period after arrest but prior to the formal commencement of criminal charges"). Additionally, we have said that a suspect's invocation of his or her rights under Iowa Code section 804.20 should be "liberally construe[d]." *State v. Hicks*, 791 N.W.2d 89, 95 (Iowa 2010). Yet, we have also said that section 804.20 "is to be applied in a pragmatic manner, balancing the rights of the arrestee and the goals of the chemical-testing statutes." *State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005). We have referred to section 804.20 as affording a "limited statutory right to an attorney consultation." *Walker*, 804 N.W.2d at 295.

We begin by examining the actual language of section 804.20. *See In re A.M.*, 856 N.W.2d 365, 371 (Iowa 2014) ("Our starting point is the statutory text."). The section states that the "attorney *shall be permitted to see and consult* confidentially with [the arrested] person alone and in private." Iowa Code § 804.20 (emphasis added). The language of the statute thus appears to establish something that the attorney will be allowed to do, not something that must occur. It does not state that the attorney *shall see and consult* confidentially with a client in custody privately; instead it says this kind of consultation has to be permitted. "Permit" means to "grant leave for or the privilege of : ALLOW, TOLERATE." *Webster's Third New International Dictionary* 1683 (unabr. ed. 2002). Hence, the wording of the statute suggests that while an attorney must be allowed to meet with his or her client in private, the

meeting itself does not have to be private if the attorney chooses to speak with his or her client under different conditions.

We previously interpreted a similar phrase, "shall permit," in this statute and stated that "[s]ection 804.20 does not require that an arrestee call an attorney; the statute is satisfied by giving him the opportunity to call or consult with a family member or an attorney." *Tubbs*, 690 N.W.2d at 914. The same operative words—that a peace officer "shall permit" one in custody to make a call—meant in *Tubbs* that phone calls were allowed, not required. *See id.*

We now turn attention to our decision in *Walker,* which represented "our first opportunity to construe the right to 'see and consult confidentially' with an attorney 'alone and in private.' " 804 N.W.2d at 291 (quoting Iowa Code § 804.20). In that case, after Walker was arrested for operating while intoxicated, he contacted an attorney by phone who subsequently directed another attorney to the police station to meet with Walker. *Id.* at 286–87. The arriving attorney was led to a detention area with booths that had glass partitions separating the visitors from the detainees. *Id.* at 287. The attorney noticed the booths were under video surveillance. *Id.* The glass barrier hampered the attorney's efforts to conduct his own assessment of Walker's level of intoxication to advise him whether to submit to chemical testing or not. *Id.* Additionally, the attorney was concerned that law enforcement could use the video system to record any efforts the attorney made to administer his own tests of intoxication to Walker. *Id.* The attorney twice requested a different room; both requests were denied. *Id.* The attorney then conferred with Walker through the glass partition using the booth's intercom system. *Id.* Thereafter Walker took the chemical test, which revealed a blood alcohol concentration of .186, and he was

charged with OWI first offense. *Id.* The district court subsequently granted Walker's motion to suppress, finding a violation of Iowa Code section 804.20. *Id.* at 288.

On appeal, we affirmed the granting of Walker's motion to suppress. *Id.* at 286. We summarized our decision as follows:

> Those holding custody of arrested persons should honor attorney requests for a private, barrier-free meeting room. Upon request, video and audio recordings should be turned off during the attorney consultation or the attorney should be allowed to temporarily block the camera. In any event, audio and video recording of the in-person attorney consultation shall not be admissible against the accused. Physical separation of the attorney and detained client and/or visual monitoring of their conference may be required upon a showing by the State of an individualized safety or security risk justifying such measures.

*Id.* at 296.

*Walker* clearly states that when an attorney so requests, law enforcement must provide a private, barrier-free meeting room for attorney–client consultation without active audio and video surveillance—unless the State has established the existence of "an individualized safety or security risk justifying such measures." *Id.* As we put it in *Walker*, "people would not believe they are meeting 'alone and in private' in a room monitored by a police surveillance camera." *Id.* at 294 (quoting Iowa Code § 804.20).

*Walker* does not hold, however, that law enforcement must provide such a room even if no request is made. In *Walker*, the attorney requested another room largely because of the glass barrier between him and his client and also due to his concern that the video surveillance might be used to develop evidence against his client. *Id.* at 287.

*Walker*'s emphasis upon a request having been made is consistent with our other prior interpretations of Iowa Code section 804.20.[2] Generally, we have not viewed the statute as self-enforcing: Something does not have to be automatically *provided* just because the statute says it must be "permitted." However, we have liberally construed efforts to invoke the rights available under the statute.

Thus, in *State v. Meissner*, we held,

An arrested person has the right under section 804.20, The Code, to consult an attorney. There was no requirement here that the defendant be told of this right by the officer. It was only required that any such request be honored.

315 N.W.2d 738, 740 (Iowa 1982). Otherwise stated, the statutory language requiring law enforcement to "permit" an arrestee to call, consult, and see an attorney does not require law enforcement to *inform* the arrestee of that right, let alone mandate that such a consultation *take place.*

Then, in a series of cases beginning with *Didonato v. Iowa Department of Transportation,* 456 N.W.2d 367, 371 (Iowa 1990), we made clear that attempts by defendants to invoke rights under Iowa Code

---

[2]*Walker* relied in part on two out-of-state decisions, one of which involved a denial of an attorney's request and the other of which involved secret taping. In *People v. Dehmer*, the Colorado Court of Appeals found that the video surveillance violated that state's statutory privacy requirements for prison consultations. 931 P.2d 460, 463 (Colo. App. 1996). The statute at issue said that those in custody must be permitted to see and consult with an attorney "alone and in private." *Id.* Although defense counsel had requested the camera be shut off or another room be provided for the meeting, prison officials refused the request. *Id.* at 462. In the other case, the Vermont Supreme Court found that law enforcement "violated defendant's right to a private consultation with his lawyer by taping the conversation. The tape itself [was] evidence that defendant's conversation with counsel was not, in fact, private." *State v. Sherwood*, 800 A.2d 463, 466 (Vt. 2002). In *Sherwood*, neither the defendant nor presumably his counsel at the other end of the phone line knew the conversation was being recorded. *Id.* at 464–65. Neither of those circumstances—failure to honor an attorney request or a surreptitious recording—is present here.

section 804.20 should be broadly construed, but without abandoning the concept that some effort to invoke the statute must be made. Hence, in *Didonato*, we said in dicta that when an arrested person asks to telephone a friend, the statutory purpose of section 804.20 is not met "if the officer stands mute" and does not advise "for what purpose a phone call is permitted under the statute." *Id.* at 371.

One exception to this trend was *Tubbs*. *See* 690 N.W.2d at 913. There the defendant had asked to speak with his wife before deciding whether to consent to chemical testing. *Id.* One of the officers, however, recalled that Tubbs had a judicial no-contact order in place regarding his wife, and therefore did not allow Tubbs to call her. *Id.* Tubbs argued on appeal that evidence of his refusal to consent to the chemical test should have been excluded. *Id.* at 914. We disagreed, noting "Tubbs failed to ask to talk to an attorney or to anyone besides his wife," and "[u]nder these circumstances, the officers fulfilled their responsibility under section 804.20." *Id.*

In *State v. Garrity*, 765 N.W.2d 592, 596–597 (Iowa 2009), though, we squarely held that once an arrestee asks to make *a* phone call, the officer has an obligation to advise the arrestee the persons to whom calls can be made. We said,

> People may be aware they have the right to a phone call, but are likely unaware of the specified people they are allowed to call. If, as here, the officer turns down the arrestee's phone call request because the request is to call someone not contemplated in the statute, the officer must explain the scope of the statutory right.

*Id.* at 597. We distinguished *Tubbs* on the ground "there was no confusion [in *Tubbs*] that triggered the duty to clarify the scope of the persons who may be called." *Id.* at 596.

We adhered to the same approach in *Hellstern.* *See* 856 N.W.2d 355. There we determined that a defendant's request for a private telephone conversation with his attorney—which is not authorized by the statute—obligated a police officer to inform the defendant of his right to a private, in-person consultation at the jail—which is authorized by the statute. *Id.* at 364–65.

In that case, Hellstern was able to reach an attorney from the jail and asked the officer for privacy during the call. *Id.* at 359. The officer responded, "Not on the phone," but failed to inform Hellstern he had a right to a private, in-person consultation at the jail. *Id.* Following the phone conversation with his attorney, Hellstern took the chemical test and received a result of .194. *Id.* We held Hellstern was entitled to suppress the test results because he

> adequately invoked his statutory right to a confidential consultation with his attorney under section 804.20 by requesting privacy during his phone call, triggering [the officer]'s duty to inform him that the attorney must come to the jail for a confidential conference.

*Id.* at 364–65. *Hellstern* is thus another case where a duty to clarify the statutory rights arose after an arrestee who lacked full knowledge of the statute tried to get outside advice before undergoing chemical testing. *See id.*

Most recently, in *State v. Lyon*, 862 N.W.2d 391, 401 (Iowa 2015), we held that Iowa Code section 804.20 does not impose a duty on police to explain to an arrestee why he should obtain legal advice. In that case, Lyon was told of his section 804.20 right to call a family member or attorney. *Id.* at 399. He then inquired about the purpose for making a call: "I'm gonna call someone first to get out of here, correct?" *Id.* The officer replied that if Lyon wanted to bond out, "that's your prerogative of

these phone calls." *Id.* Lyon asserted that the officer's response was "misleading" in that officers should be required to tell persons in custody that the purpose of the calls is to get advice about whether to take a chemical test. *Id.* We declined to adopt such a suppression rule because "[w]e do not believe law enforcement officers must help shape the nature of the communication with attorneys and family members once they have honored the accused's right to communicate with such individuals." *Id.* at 401. We noted that the officer had not made a misstatement of law or undermined the defendant's rights, and he had "plainly honored" the defendant's section 804.20 to make phone calls. *Id.* at 401.

While *Lyon* held that law enforcement need not inform an arrestee of the preferred reasons for making a call to a family member or an attorney, we have found that law enforcement may not interfere with an arrestee's efforts to place such a call just because they believe his or her stated reasons for the call lack "good faith" or are "futile." *See Hicks*, 791 N.W.2d at 96. In *Hicks*, we held that the state violated Iowa Code section 804.20 by denying the defendant a reasonable opportunity to call his mother after he had asked to do so, even though the defendant's mother presumably would not have been able to "come get [him]" as the defendant desired. *Id.*

Unlike circumstances where we have granted relief in the past, the present case does not involve law enforcement's refusal to honor an arrestee's or an attorney's direct assertion of Iowa Code section 804.20 rights. *Cf. Walker*, 804 N.W.2d at 296; *Hicks*, 791 N.W.2d at 96. Nor does it involve law enforcement's failure to clarify the scope of section 804.20 rights to an arrestee whose requests indicated he may well have wanted to exercise those rights but did not know what rights the statute afforded. *Cf. Hellstern,* 856 N.W.2d at 364; *Garrity*, 765 N.W.2d at 597;

*Didonato*, 456 N.W.2d at 371.  To put it another way, this case is not about "legally inaccurate requests."  *See State v. Lukins*, 846 N.W.2d 902, 908 (Iowa 2014) (summarizing caselaw under Iowa Code section 804.20).

Importantly, this case does not involve surreptitious recording of attorney-client conversations.  Here, Lamoreux's attorney was aware that the video and audio recording systems were functional and that the audio could be switched off. Yet he did not turn the audio off, cover the camera, or request another room, although he had been known to turn off the microphone in the past.  Additionally, the presence of the audio and camera monitoring would have been obvious to Lamoreux himself. Nothing in the record indicates that Lamoreux's attorney was not "permitted" to consult confidentially and in private with his client; rather, the attorney made a decision to go ahead and consult with his client without privacy.  No violation of Iowa Code section 804.20 occurred in this situation.

We believe the foregoing interpretation of section 804.20 is a reasonable one that "will best effectuate the purpose of the statute." *Walker*, 804 N.W.2d at 290 (quoting Johnson, 528 N.W.2d at 640). Space is often limited in law enforcement facilities and, as here, rooms may be equipped with surveillance for general security reasons.  It may be more practical, and safer, to have the monitoring in effect unless specifically deactivated rather than the other way around.  Also, an attorney called to a police station or jail late at night to meet an unruly client whom he or she does not know may prefer *not* to be alone in a closed-off, unmonitored room.  In addition, we are reluctant to interpret section 804.20 as granting relief from a set of circumstances that were clearly accepted at the time.  Furthermore, it is reasonable to expect an

attorney who sees a surveillance system in operation to ask that the surveillance be turned off or that a different room be provided.  Normally, in our legal system, attorneys have to ask for things and are good at doing so; that is why clients are willing to pay them.

**IV.  Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and affirm the district court's denial of Lamoreux's motion to suppress.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**