**IN THE COURT OF APPEALS OF IOWA**

No. 16-0963
Filed May 3, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JUSTIN KRUTSINGER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner (motion to suppress) and Paul R. Huscher (trial), Judge.

Defendant appeals his conviction for homicide by vehicle while intoxicated. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Justin Krutsinger appeals his conviction for homicide by vehicle while intoxicated. We find the district court did not err in denying Krutsinger's motion to suppress based on his claim he was denied the right to make a telephone call and there was sufficient evidence in the record on the issue of causation. We affirm Krutsinger's conviction.

## I.      Background Facts & Proceedings

On February 27, 2015, Justin Krutsinger went to the home of Keri Hanzlick in Waukee at about 5:30 p.m. Krutsinger and Hanzlick had one to two drinks before going to a restaurant for dinner, where Krutsinger had two or three bottles of beer. On the way back to Hanzlick's home, they picked up a twelve-pack of beer and a bottle of vodka. Krutsinger had a few more drinks while they watched a movie. Krutsinger fell asleep for a short time, and when he woke up, he started crying. Hanzlick testified "he thought we were being watched, kept asking why they were watching us." Krutsinger became upset and a little agitated. He gathered his belongings and left Hanzlick's house at about 11:00 p.m.

At about midnight, Krutsinger, who was driving a Chevrolet Malibu, was involved in a collision with a Pontiac Grand Prix driven by Heidi Harkrader on Highway 6, just east of Adel. The crash data retrieval system in the Malibu showed Krutsinger was driving 116 miles per hour at the time of the collision and did not touch the brakes prior to the crash. Krutsinger drove into the back of the Grand Prix, forcing it off the road, and it eventually hit a house. There was an open can of beer in the center console of Krutsinger's vehicle and a partially full

twelve-pack of beer in the backseat. Harkrader died at the scene as the result of injuries sustained in the collision.

A registered nurse, Diana Wenger, who was the first person on the scene of the accident, testified Krutsinger had an odor of alcohol, was slurring his words, and was agitated. Officers who were assisting in the incident also testified Krutsinger had bloodshot, watery eyes, he had an odor of alcohol, and he was agitated. The paramedic and emergency medical technicians (EMT) who treated Krutsinger gave similar testimony. Krutsinger was taken by ambulance to the hospital for an assessment of his injuries. Two public safety officers from the hospital testified Krutsinger appeared to be impaired by alcohol. The emergency room physician, Dr. Richard Sidwell, testified Krutsinger was verbally aggressive and he believed Krutsinger was intoxicated. Krutsinger became so agitated at the hospital he was handcuffed to the bed for a period of time for the safety of medical personnel.

At about 1:30 a.m., State Troopers Jody Elliott and Corey Champlin of the Iowa Department of Public Safety came to the hospital. Krutsinger was released from the handcuffs shortly thereafter. He was given a *Miranda* warning. Trooper Elliott asked for a preliminary breath test, and Krutsinger either asked if he needed a lawyer or stated he wanted to call a lawyer. Trooper Elliott stated Krutsinger could call a lawyer.[1] Krutsinger immediately stated he would take the preliminary breath test, so he was given the test. There was a telephone in the

---

[1] There was also evidence Trooper Elliott told Krutsinger he could not give him legal advice, but Krutsinger could call a lawyer if he wanted to.

room, and Trooper Elliott stated, "I would have let him make any number of phone calls that he wanted to make."

During the course of the discussion, Krutsinger stated he wanted to call a lawyer so he could leave the hospital. Trooper Elliott told Krutsinger, "You can call a lawyer, but you're not leaving." Krutsinger was informed he was being detained, and he then changed the subject and began talking about something else. Trooper Champlin read Krutsinger the implied consent advisory. Trooper Elliott asked Krutsinger if he wanted to call a friend, family member, or attorney and Krutsinger said, "No." Krutsinger was asked for a blood test; he refused but agreed to a urine test. The urine test showed Krutsinger had an alcohol level of .200, well above the legal limit of .08.

Krutsinger was charged with homicide by vehicle while intoxicated, in violation of Iowa Code section 707.6A(1) (2015). He filed a motion to suppress, claiming he was denied his statutory right to make a telephone call, pursuant to section 804.20. The district court found, as to the first exchange, Krutsinger decided not to call an attorney but to submit to the preliminary breath test. For the second exchange, the court found Krutsinger's conduct conveyed the message he did not wish to call an attorney. For the third exchange, the court found Krutsinger affirmatively declined his right to call an attorney. The court concluded Krutsinger did not invoke his right to call an attorney under section 804.20, and furthermore, even if he had previously invoked the right, he knowingly and voluntarily waived it before providing the urine specimen.

The case proceeded to a jury trial. The State presented evidence to show Krutsinger was intoxicated at the time of the incident. In addition to the evidence

of Krutsinger's alcohol level from his urine sample, several witnesses who had contact with Krutsinger after the collision testified he appeared to be intoxicated. The defense presented the expert testimony of Dr. Steven Bruce, a psychologist, who testified Krutsinger has post-traumatic stress disorder (PTSD) arising from his service in the Army in Iraq and Afghanistan. Dr. Bruce testified Krutsinger's conduct on the night of the collision was consistent with being in a dissociative state, where he was not conscious of his actions. Krutsinger's former wife, Raeann Krutsinger, testified to three previous episodes where Krutsinger was in a dissociative state and stated none of these incidents involved the use of alcohol. Krutsinger testified to his problems with PTSD. He stated he did not remember anything between the time he was eating dinner with Hanzlick to when he was in the ambulance. Krutsinger admitted it was not out of the question for him to drink heavily on a weekend.

The jury found Krutsinger guilty of homicide by vehicle while intoxicated. He was sentenced to a term of imprisonment not to exceed twenty-five years. Krutsinger now appeals his conviction.

## II.    Motion to Suppress

Krutsinger claims the district court should have granted his motion to suppress because he was denied his right to call an attorney under section 804.20. He states he asked to call an attorney. Krutsinger claims the officers should have informed him there was a telephone in the room and provided him with a telephone book in order to give him a reasonable opportunity to call an attorney.

We review the district court's interpretation of section 804.20 for the correction of errors at law. *See State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016). "We will affirm the district court's ruling on a motion to suppress if 'the court correctly applied the law and substantial evidence supports the court's fact-finding.'" *Id.* (quoting *State v. Walker*, 804 N.W.2d 284, 289 (Iowa 2011)).

Section 804.20 provides:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without unreasonable delay. A violation of this section shall constitute a simple misdemeanor.

A defendant's right to make a telephone call under section 804.20 "is a limited one and only requires a peace officer to provide the suspect with a reasonable opportunity to contact an attorney or family member." *State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010). "The statute does not require a police officer to affirmatively inform the detainee of his statutory right; however, the peace officer cannot deny the right exists." *Id.*

In the first exchange, after Krutsinger raised the issue of calling a lawyer, the officers told him he could call a lawyer if he wanted to, and Krutsinger immediately stated he would take the preliminary breath test. The district court did not err in concluding Krutsinger's conduct showed he did not want to call an

attorney at that time. In the second exchange, Krutsinger stated he wanted to call a lawyer "because he wanted to get out of here." The officers stated Krutsinger could call an attorney but he was not going to be released, and Krutsinger then changed the subject. The district court did not err in finding Krutsinger's conduct again showed he did not want to call an attorney. In the third exchange, when Krutsinger was specifically asked if he wanted to call a family member, friend, or attorney, he responded, "No." The district court did not err in concluding "Krutsinger affirmatively declined to invoke his right to call an attorney."

We affirm the district court's decision denying the motion to suppress.

### III.    Sufficiency of the Evidence

Krutsinger was charged with violating section 707.6A(1), which provides, "A person commits a class 'B' felony when the person unintentionally causes the death of another by operating a motor vehicle while intoxicated, as prohibited by section 321J.2." "[I]t is the State's burden under section 707.6A(1) to prove a causal connection between the defendant's intoxicated driving and the victim's death." *State v. Adams*, 810 N.W.2d 365, 371 (Iowa 2012). Krutsinger claims the State did not present sufficient evidence to show the victim's death was caused by operating while intoxicated. He states the collision was caused because he was driving while in a dissociative state, which was a symptom of his PTSD.

On claims concerning the sufficiency of the evidence, our review is for the correction of errors at law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). We will uphold a verdict if there is substantial evidence in the record to uphold it.

*Id.* at 440. We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* at 439-40.

"A defendant may be found guilty of homicide by vehicle only if the jury finds beyond a reasonable doubt that his criminal act of driving under the influence of alcohol caused the victim's death." *Adams*, 810 N.W.2d at 371. We consider "whether the victim's death would have occurred in the absence of the defendant's criminal act—intoxicated driving." *Id.* at 372; *see also State v. Tyler*, 873 N.W.2d 741, 748 (Iowa 2016) (discussing the principles of causation detailed in *Adams*).

There was ample evidence in the record to show Krutsinger was intoxicated at the time of the collision. The urine specimen showed Krutsinger's alcohol level was .200, above the legal limit. In addition, a disinterested bystander, three officers, a paramedic, two EMTs, two hospital public safety officers, and the emergency room physician all testified Krutsinger showed signs of intoxication. Officer Anthony Yeager testified intoxication may cause a person to drive very fast, which could support a finding Krutsinger's speed of 116 miles per hour at the time of the collision was caused by intoxication.

We recognize there was also evidence in the record to show Krutsinger has PTSD and sometimes enters a dissociative state, during which he would not be conscious of his actions. While Krutsinger and Dr. Bruce testified Krutsinger may have been in a dissociative state at the time of the collision, the jury was free to reject that evidence. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and

to give weight to the evidence as in its judgment such evidence should receive."). Issues such as conflicts in the evidence, the credibility of witnesses, and the proper weight of the evidence are matters are for the jury. *State v. Hutchison*, 721 N.W.2d 776, 780 (Iowa 2006).

We determine there was substantial evidence in the record to show a causal connection between Krutsinger's intoxicated driving and the victim's death.

We affirm Krutsinger's conviction for homicide by vehicle while intoxicated.

**AFFIRMED.**