# IN THE COURT OF APPEALS OF IOWA

No. 19-0081
Filed March 4, 2020

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**JAIME ENRIQUE LOPEZ GONZALEZ,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Warren County, Kevin A. Parker, District Associate Judge.

 Defendant appeals his conviction for operating while intoxicated, first offense. **REVERSED AND REMANDED FOR A NEW TRIAL.**

 Daniel J. Rothman of McEnroe, Gotsdiner, Brewer, Steinbach & Rothman, P.C., West Des Moines, for appellant.

 Thomas J. Miller, Attorney General, and Richard Bennett, Assistant Attorney General, for appellee.

 Heard by Vaitheswaran, P.J., Schumacher, J., and Potterfield, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCHUMACHER, Judge.**

Jaime Lopez Gonzalez appeals his conviction for operating while intoxicated (OWI), first offense. Lopez Gonzalez argues a brief colloquy with the arresting state trooper was sufficient to trigger the requirement that the trooper advise him of his right to contact an attorney or family member pursuant to Iowa Code section 804.20 (2017), and he contends the district court erred by denying his motion to suppress. We concur with the argument advanced by Lopez Gonzalez, and as such, we reverse and remand for a new trial.

## I.      Background Facts & Proceedings

On July 30, 2017, Lopez-Gonzales was driving a pickup pulling a livestock trailer, accompanied by his wife. Iowa State Trooper Wade Major stopped Lopez Gonzalez because the trailer lights were not operational and the trailer registration sticker was expired. Trooper Major noted Lopez Gonzalez had watery eyes and the odor of an alcoholic beverage. Lopez Gonzalez admitted he had consumed three or four beers. Lopez Gonzalez failed field sobriety tests. Trooper Major told Lopez Gonzalez's wife that he was taking Lopez Gonzalez for further testing, and she drove away in the pickup.

Trooper Major transported Lopez Gonzalez to the Warren County jail, which is located inside the Warren County Courthouse. En route, Lopez Gonzalez was seated in the front passenger seat of the cruiser and was not handcuffed at any time, but he was not free to leave. Both men exited the cruiser and proceeded into the courthouse. Before the men entered the elevator leading to the floor housing the jail, both Lopez Gonzalez and Trooper Major encountered a group of individuals that indicated they were there to see an inmate. Lopez Gonzalez and

some members of the group spoke briefly in Spanish. Trooper Major provided this group additional instruction in English. Following this encounter, both Lopez Gonzalez and the trooper proceeded toward the elevator, and Lopez Gonzalez asked Trooper Major, "My wife, she gonna come?" Trooper Major replied, "You might wanna, like, call her later, maybe." Lopez Gonzalez replied "okay." The men then entered the elevator and proceeded to the jail. This exchange was recorded on Trooper Major's body microphone. At oral argument, the State conceded that Lopez Gonzalez was detained when he posed the question to the trooper.

Lopez Gonzalez did not make any additional requests to contact an attorney or family member after his entry into the jail. Likewise, at no time after entry into the jail did Trooper Major advise him of his rights arising under section 804.20. Lopez Gonzalez was provided Spanish and English-language copies of the implied-consent form. The record does not reflect the presence of an interpreter at the jail, and Lopez Gonzalez previously indicated to Trooper Major that he could not read Spanish. A review of the DVD offered by the State reflects that Lopez Gonzalez's English skills are limited.[1] After executing the form, Lopez Gonzalez complied with administration of the breath test. The test results were .122, which is above the legal limit. Lopez Gonzalez was ultimately arrested and charged with OWI, first offense, in violation of section 321J.2.

Lopez Gonzalez moved to suppress the results of the breath test on the ground his rights under section 804.20 had been violated. He claimed he asked

---

[1] An interpreter was utilized at both the motion to suppress and subsequent trial.

for his wife to come to the police station and this triggered his rights under section 804.20 to consult with an attorney or family member, via telephone or in person, after arriving at the jail. Lopez Gonzalez argued Trooper Major had a duty to notify him of the consultation right arising under 804.20.

At the hearing on the suppression motion, Trooper Major testified Lopez Gonzalez did not ask to make any telephone calls or to speak to anyone. He did not believe Lopez Gonzalez's question was a request to speak to his wife, and as such, he did not inform Lopez Gonzalez of his rights under section 804.20. The district court denied the motion to suppress, finding:

> Trooper Major allowed defendant to make phone calls at any time, and Defendant Lopez Gonzalez appeared to understand the conversation he had with Trooper Major.
> The only relevant statement defendant made was at the arrest scene about his wife coming to the jail. Trooper Major stated the defendant could call his wife later. Defendant Lopez Gonzalez did not make any calls and did not make a second request to contact his wife.
> Trooper Major followed the requirements of Iowa Code section 804.20.

Lopez Gonzalez filed a motion to reconsider. Lopez Gonzalez argued the statement made before entering the elevator was made at the place of detention and triggered the right to consult pursuant to section 804.20 and no second request was required. The district court denied the motion to reconsider and confirmed its ruling on the motion to suppress without further findings.

A trial on the minutes took place on July 13. Lopez Gonzalez was found guilty of OWI. On January 7, 2019, Lopez Gonzalez was sentenced to five days in jail, with credit for time served and for completion of an OWI program if

completed within thirty days. He was also ordered to pay fines, penalties, and surcharges. Lopez Gonzalez appeals.

## II.     Standard of Review

"We review a district court's interpretation of Iowa Code section 804.20 for errors at law." *State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019) (quoting *State v. Lamoreux*, 875 N.W.2d 172, 176 (Iowa 2016)). Rulings on motions to suppress are affirmed when "the court correctly applied the law and substantial evidence supports the court's fact-finding." *Lamoreux*, 875 N.W.2d at 176 (quoting *State v. Walker*, 804 N.W.2d 284, 289 (Iowa 2011)).

## III.     Discussion

Lopez Gonzalez argues the brief colloquy with Trooper Major outside the elevator was sufficient to invoke his right to consult with a family member or attorney pursuant to Iowa Code section 804.20. Section 804.20 states in relevant part,

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney.

Section 804.20 applies when a defendant has been arrested or otherwise restrained of liberty and is at a place of detention. *State v. Hellstrom*, 856 N.W.2d 355, 361 (Iowa 2014). If a defendant makes a valid invocation of the statutory right under section 804.20 prior to reaching a place of detention, officers must honor the request "without unnecessary delay after arrival at the place of detention." *State v. Moorehead*, 699 N.W.2d 667, 672 (Iowa 2005) (quoting Iowa Code § 804.20).

In determining whether a defendant's rights under section 804.20 have been adequately invoked, the supreme court has "examined the clarity of the suspect's request to determine if the suspect invoked his statutory right." *State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010). "[W]hen a suspect 'restrained of [his] liberty' makes a statement that can reasonably be construed as a request to communicate with family members or an attorney, the suspect has invoked his section 804.20 right to communicate with family or counsel." *Id.* at 95 (second alteration in original). We liberally construe a defendant's statements, and grammatical clarity is not required. *Id.*

The State concedes Lopez Gonzalez was "restrained of his liberty" at the time he posed the question. *See Moorehead*, 699 N.W.2d at 672. There is no dispute that Trooper Major responded to his question by indicating that Lopez Gonzalez may want to call his wife later. As testified to by Trooper Major, he believed the words from Lopez Gonzalez to be a question rather than a statement. The district court denied the motion to suppress by saying Lopez Gonzalez "did not make a second request to contact his wife." This suggests that in the district court's view, when Lopez Gonzalez spoke the words, "My wife, she gonna come?" such was a request by Lopez Gonzalez to contact his wife.

To determine whether Lopez Gonzalez was denied his right to contact a family member under section 804.20, two distinct inquiries are required. First, we must determine whether he invoked his rights under section 804.20. *Hicks*, 791 N.W.2d at 94. Second, we examine whether he was afforded the rights section 804.20 guarantees. *Id.* We consider these inquiries in turn.

As set forth by the Iowa Supreme Court, the legislative purpose of section 804.20 is to afford detained suspects the opportunity to communicate with a family member and attorney. *See State v. Vietor,* 261 N.W.2d 828, 831. We think the best way to further this statutory purpose is to liberally construe a suspect's invocation of this right. *See State v. Effler*, 769 N.W.2d 880, 896–98 (Iowa 2009) (Appel, J., specially concurring); *State v. Chew,* 695 A.2d 1301, 1317–18 (N.J. 1997). "A detainee's invocation of section 804.20 should not turn on the grammatical clarity of the detainee's request." *Hicks*, 791 N.W.2d at 95. Nor do we believe the statute authorizes law enforcement to make discretionary decisions as to whether a detainee invoked this statutory right. *See State v. Garrity*, 765 N.W.2d 592, 596–97 (Iowa 2009).

In order to further the purpose of the statute and ensure suspects are afforded their statutory right, we hold that when a suspect "restrained of [his] liberty" makes a statement that can reasonably be construed as a request to communicate with family members or an attorney, the suspect has invoked his section 804.20 right to communicate with family or counsel. By providing detainees this statutory right, the legislature has deemed a detainee's right to communicate with family or counsel to be a tolerable burden upon law enforcement and has found that the creation of this right suitably balances the State's law enforcement needs with the rights of the accused. Our construction concerning the invocation of section 804.20 upholds this balance. *See Hicks*, 791 N.W.2d at 95.

Once section 804.20 is invoked, the peace officer must provide the detainee "with a reasonable opportunity" to contact a family member or attorney. *Bromeland*

*v. Iowa Dep't of Transp.*, 562 N.W.2d 624, 626 (Iowa 1997). The district court concluded in its ruling on April 10, 2018, that Trooper Major allowed defendant to make phone calls at any time. We disagree with this finding based on our review of the record. Trooper Major did not direct Lopez Gonzalez to the phone, he did not ask Lopez Gonzalez for the name and number of his wife, nor did he attempt to place the phone call for Lopez Gonzalez. No reasonable opportunity to make a phone call to a family member or meet with a family member was provided as guaranteed by section 804.20.

By its language, section 804.20 only applies when a suspect is "restrained of [his] liberty." As set forth in *Hicks*, section 804.20 requires law enforcement to take affirmative action to ensure the request for a phone call is honored. 791 N.W.2d at 96–97. Because of the disparity in power between detaining officers and detained suspects during the detention process, no lesser standard is adequate. Requiring a suspect with restrained liberty to affirmatively pick up a police department's telephone and contact family or counsel without invitation from the detaining officer transforms section 804.20 into an illusory statutory right.

Moreover, requiring affirmative action by law enforcement personnel is consistent with our supreme court precedent. *See Bromeland*, 562 N.W.2d at 626 (holding the police officer provided the detainee a reasonable opportunity after looking up the phone number of the detainee's requested attorney and dialing the attorney's phone number); *Didonato v. Iowa Dep't of Transp.*, 456 N.W.2d 367, 371 (Iowa 1990) ("But when a request to make a phone call is made we do not believe the statutory purpose is met if the officer stands mute and refuses the request."). The legislature mandates that law enforcement "shall permit [the

detainee] . . . to call" a family member or attorney. As set forth in case law precedent, once section 804.20 is invoked, the detaining officer must direct the detainee to the phone and invite the detainee to place a call or obtain the phone number from the detainee and place the phone call. *Hicks*, 791 N.W.2d at 96–97.

After reviewing the record, including the recording from Trooper Major's body microphone, we conclude under the specific facts and circumstances of this case that Lopez Gonzalez's question, "My wife, she gonna come?" should have been reasonably construed as a request to communicate with his wife or see his wife.

Because Lopez Gonzalez invoked his statutory rights under section 804.20, he was required to be advised of his right "to call, consult and see" a member of his family. *See Moorehead*, 699 N.W.2d at 672. This advisory was not given. The district court erred in denying Lopez Gonzalez's motion to suppress. The remedy for a violation of section 804.20 is exclusion of any evidence gathered after invocation of the right. *Id.* at 98. We reverse and remand for a new trial consistent with this opinion.

**REVERSED AND REMANDED FOR A NEW TRIAL.**