STATE of Iowa, Appellee,

v.

Mark Leonard TUBBS, Appellant.

No. 03–1765.

Supreme Court of Iowa.

Jan. 14, 2005.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Derek J. Schwieger, County Attorney, and Tomas R. Meyer, Former County Attorney, for appellee.

LARSON, Justice.

Mark Tubbs was convicted of driving while intoxicated and assaulting a police

officer, in violation of Iowa Code sections 321J.2 and 708.3A (2001). He appeals, contending the district court erred in admitting evidence of his refusal to submit to a blood or urine test and in allowing improper *voir dire* examination by the prosecutor. He also contends his trial counsel was ineffective in failing to challenge the sufficiency of the evidence and the court's instructions to the jury. We affirm.

## I. Facts and Prior Proceedings.

We will set out in some detail the events preceding Tubbs' arrest and prosecution because one of his issues on appeal is the sufficiency of the evidence of intoxication. On May 11, 2003, at approximately 2:30 a.m., Officer Tony Walter, of the Humboldt Police Department, saw Tubbs speeding on Highway 169. Walter pulled in behind him with lights and sirens going. Tubbs continued to drive, swerving within his lane. Eventually, he turned into a convenience store parking lot, left his car, and began walking toward the store. Officer Walter, using his squad car PA system, ordered Tubbs to stop, but he kept walking. Walter ordered Tubbs to stop two more times, and after the third time, he finally stopped.

Officer Walter approached Tubbs and noticed he smelled of alcohol, appeared disheveled, and he was having trouble balancing. Walter asked Tubbs to perform field sobriety tests, and Tubbs agreed. By this time, another officer, Officer Davies, arrived at the scene. As Walter began to instruct Tubbs on the tests, both officers noticed that Tubbs became very despondent. During the first test—following the officer's finger with his eyes—Tubbs just stared at the ground. Tubbs also failed to properly perform the walk-and-turn test, and he refused to perform the one-legged-

stand test. Based on their observations, the officers decided to arrest Tubbs.

However, instead of submitting to the officers, Tubbs began running around, shouting obscenities, and daring the officers to shoot him. When the officers tried to apprehend him, he charged them. The officers were ultimately able to subdue Tubbs, at which point Tubbs then complained that his arm hurt. The officers called an ambulance, and Tubbs was taken to the hospital.

■ Once at the hospital, Tubbs urinated on two examination tables and passed in and out of consciousness. The officers asked Tubbs if he would consent to chemical testing of his blood or urine. Initially, Tubbs agreed, but then changed his mind and said he wanted his wife to read the consent form before he would agree to anything. The officers were about to call his wife when one of them remembered from a prior encounter that Tubbs was under a judicial no-contact order with respect to his wife. Tubbs responded that the order had been or was soon going to be lifted, but the officers would not permit him to call her. Tubbs refused to consent. Tubbs did not ask to contact any other family member or an attorney, as provided by Iowa Code section 804.20:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both.

## II. The Officers' "Failure" to Allow the Telephone Call.

■ On Tubbs' claim that the officers failed to provide him the telephone call

required by section 804.20, it is necessary to discuss the matter of error preservation. Tubbs' trial attorney failed to file a motion to suppress evidence of the defendant's refusal within forty days after arraignment, as required by Iowa Rule of Criminal Procedure 2.11(4). Nevertheless, his appellate counsel urges us to excuse that failure and consider Tubbs' argument on its merits because he received ineffective assistance of counsel, thereby excusing any failure to preserve error.

We need not consider Tubbs' suppression argument in the context of ineffective assistance because the State waived any timeliness objection by failing to raise it in the district court. *See DeVoss v. State,* 648 N.W.2d 56, 63 (Iowa 2002) ("[O]ne party should not ambush another by raising issues on appeal, which that party did not raise in the district court."). In fact, the State acknowledges the impact of *De-Voss* and does not assert a timeliness objection. We deem the preservation issue waived and proceed to Tubbs' suppression argument on its merits. According to Tubbs, the officers' failure to permit him to make the call provided for by section 804.20 requires that any evidence of his refusal be excluded. *See State v. Vietor,* 261 N.W.2d 828, 832 (Iowa 1978).

■ One purpose of section 804.20, of course, is to allow an arrestee to call an attorney before deciding whether to submit to a chemical test. *See id.* at 831 ("[T]here is a limited statutory right to counsel before making the important decision to take or refuse the chemical test under implied-consent procedures."). Section 804.20 does not require that an arrestee call an attorney; the statute is satisfied by giving him the opportunity to call or consult with a family member or an attorney. It also does not require that an arrestee be informed of any right to counsel. *Id.*

■ Section 804.20 is to be applied in a pragmatic manner, balancing the rights of the arrestee and the goals of the chemical-testing statutes. *See, e.g., id.* (balancing arrestee's right to counsel "against the practical consideration that [under section 321J.6] a chemical test is to be administered within two hours of the time of arrest or not at all"); *accord State v. Bowers,* 661 N.W.2d 536, 542 (Iowa 2003) (stating that an arrestee's right to contact a family member under section 804.20 is "considerably diluted" when the requested family member is also in custody for criminal conduct carried on jointly with the arrestee); *Bromeland v. Iowa Dep't of Transp.,* 562 N.W.2d 624, 626 (Iowa 1997) (holding an arrestee has the right to contact an attorney, but not a specific attorney who is unavailable when called).

In this case, Tubbs was denied the opportunity to speak with his wife because this would have violated the no-contact order. However, he was not denied the opportunity to talk to another family member or to an attorney. Tubbs failed to ask to talk to an attorney or to anyone besides his wife. Under these circumstances, the officers fulfilled their responsibility under section 804.20.

### III. *The Jury Selection.*

Tubbs also complains that the prosecutor conducted improper *voir dire* examination of jurors, as set out in this objection made at trial:

> [DEFENSE COUNSEL]: ... [The prosecutor] began asking questions of the jurors as to what symptoms they might observe in someone they believed might be intoxicated. A juror started

talking about slurred speech. [The prosecutor] continued to follow up with maybe other symptoms that a juror might see in a person who might be intoxicated and my objection is that those type of questions are basically eliciting testimony from the jurors rather than trying to determine whether the juror can be a fair and impartial witness and we would object to that line of questioning.

The jury selection was not reported, and it does not appear that similar questions were asked of other potential jurors. In any event, the court overruled the objection.

■■■ Tubbs claims the court abused its discretion by allowing this questioning. Specifically, he claims the questions were improper because (1) they did not relate to any of the enumerated for-cause challenges listed in Iowa Rule of Criminal Procedure 2.18(5), and (2) the questions were asked to "bias[ ] the panel, or get[ ] jurors to commit to voting any particular way." At the outset, we note that the district court has broad discretion in the selection of juries. " 'Control of jury *voir dire* is lodged in the sound discretion of the trial court.' " *State v. Proctor*, 585 N.W.2d 841, 844 (Iowa 1998) (quoting *State v. Reed*, 482 N.W.2d 672, 674 (Iowa 1992)). We will reverse only if the court has manifestly abused its discretion. *Id.*

■■■ With respect to Tubbs' first argument, he has not cited any cases, and we are aware of none, that have limited *voir dire* to those matters on the laundry list of challenges for cause contained in rule 2.18(5) (e.g., previous conviction of a felony, having formed or expressed an opinion on guilt or innocence, having been a defendant in a similar case, and other enumerat-

ed grounds). To illustrate, we have held that in cases involving racial diversity between a defendant and a victim the court should make or allow counsel to make specific inquiry on *voir dire* concerning possible racial prejudice, even though racial prejudice is not listed in rule 2.18(5) as a ground for challenge. *State v. Windsor*, 316 N.W.2d 684, 687 (Iowa 1982).

■■■ As to Tubbs' second *voir dire* argument, we believe a reasonable view of the questions asked is that the prosecutor was attempting to assess potential jurors' understanding of what evidence is relevant on the question of intoxication, especially when, as here, there was no chemical test in evidence. In addition to assisting counsel in bringing challenges for cause, *voir dire* affords counsel an opportunity to discover information that may be useful in exercising peremptory challenges. *See Mu'Min v. Virginia*, 500 U.S. 415, 431, 111 S.Ct. 1899, 1908, 114 L.Ed.2d 493, 509 (1991) ("*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). We have said that "a wide latitude is necessarily allowed counsel in examining the jurors for the purpose of advising him as to how to exercise his peremptory challenges." *Raines v. Wilson*, 213 Iowa 1251, 1253, 239 N.W. 36, 37 (1931). We conclude that the trial court did not abuse its discretion in ruling on the defendant's objections.

### IV. *Sufficiency of the Evidence.*

■■■ Tubbs' trial counsel moved for a verdict of acquittal in general terms, stating simply "I would make a Motion for Acquittal on the OWI, and two assaults on peace officers, your Honor."

On appeal Tubbs argues his trial lawyer was ineffective because he failed to assert

insufficiency of the evidence as a specific ground for his motion. We conclude that, even if Tubbs' trial counsel had been more specific and raised the grounds now urged, the motion was properly overruled. We have said:

> The principles of law for reviewing a motion for judgment of acquittal based on sufficiency of the evidence are well established:
>
> > When reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. It is necessary to consider all of the evidence and not just the evidence supporting the verdict. A jury verdict is binding upon this court and will be upheld unless the record lacks substantial evidence to support the charge. Substantial evidence means evidence which would convince a rational trier of fact that the [defendant is] guilty of the crime charged beyond a reasonable doubt.

*State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984) (quoting *State v. Blair*, 347 N.W.2d 416, 418–19 (Iowa 1984)). When the evidence is viewed under these principles, we conclude it is clearly sufficient to support the jury's verdict. Tubbs failed to pull over despite the fact the officers had their lights and siren on, he swerved within his lane, failed to stop when ordered to do so by the officers, smelled of alcohol, appeared disheveled, and had trouble balancing. He failed field-sobriety tests and became combative when the officers attempted to arrest him. At the hospital, he urinated on two examination tables and passed in and out of consciousness. The evidence of intoxication was substantial, and the trial court properly overruled the motion for judgment of acquittal.

### V. *The Court's Instructions.*

The defendant's last issue, also raised as ineffective assistance of counsel because his lawyer failed to object at trial, concerns two of the court's instructions. Instruction No. 3 informed the jury:

> You must determine the Defendant's guilt or innocence from the evidence and the law in these instructions.

Instruction No. 7 stated:

> The Defendant has been charged with three Counts. This is just a method for bringing each of the charges to trial. If you find the Defendant innocent or guilty on any one of the Counts, you may not conclude guilt or innocence on the others. The Defendant's innocence or guilt must be determined separately on each Count.

Tubbs complains that use of the words "innocence" and "innocent" suggests, erroneously, that the defendant had to prove something, i.e., that he was innocent. We summarily reject that argument; even if Tubbs' trial counsel had raised a timely objection to these instructions, it would not be a ground for reversal. As Instruction No. 3 states:

> You must consider all the instructions together. No one instruction includes all of the applicable law.

When the instructions are considered as a whole, they make it clear that Tubbs was presumed innocent and the State had the burden to prove guilt beyond a reasonable doubt. *See State v. Fintel*, 689 N.W.2d 95, 104 (Iowa 2004) (rejecting "innocence" argument on same grounds).

We find no basis for reversing Tubbs' conviction and therefore affirm.

**AFFIRMED.**