**IN THE COURT OF APPEALS OF IOWA**

No. 15-1304
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SHANE DOUGLAS DEIMERLY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Poweshiek County, Rose Anne
Mefford, District Associate Judge.


        Shane Douglas Deimerly appeals from his conviction for operating while
intoxicated.  **AFFIRMED.**


        Scott A. Michels of Gourley, Rehkemper & Lindholm, P.L.C., West Des
Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kelli Huser, Assistant Attorney
General, for appellee.


        Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

Shane Douglas Deimerly appeals from his conviction for operating while intoxicated, asserting the arresting officer violated his rights under Iowa Code section 804.20 (2013) when he failed to advise Deimerly that he had a right to see a family member or attorney, as well as when the deputy denied the existence of a right to an in-person consultation. We conclude Deimerly failed to preserve error on his claim that the deputy denied the existence of the right to an in-person consultation. We also affirm district court's denial of Deimerly's motion to suppress because his request to "wait" did not invoke his rights under section 804.20 or trigger a duty for the deputy to explain the scope of Deimerly's rights to an in-person consultation with an attorney or family member.

## I.  Background Facts and Proceedings.

On September 21, 2014, Deimerly drove his vehicle into a ditch. Deputy Sheriff Ben Anderson arrived at the scene and noticed Deimerly appeared intoxicated; Deimerly was subsequently arrested. While at the sheriff's office, Deputy Anderson informed Deimerly he could make phone calls and provided a phone and a phonebook. Deimerly called his brother. He then asked for the phone number of Dawn Powell, who was a front office secretary at the sheriff's office with an unlisted number. At the suppression hearing, Deputy Anderson testified:

> A: I didn't provide [Deimerly] with [Dawn's] phone number because it's not customary for us to give out employee phone numbers.
> Q: What did you tell the defendant in response to that request?  A: I told him I wasn't going to give him her phone number.

The two then went to the room in which the Datamaster breath test would be performed. Implied consent was invoked, and Deimerly was offered the printed advisory as Deputy Anderson read the advisory out loud. The following exchange was then captured on the audio recording:

> Deputy Anderson: . . . Do you understand that?
> Deimerly: 321J
> Deputy Anderson: Basically, what I am going to ask you is for a sample of your breath.
> Deimerly: Well, I mean, that's fine, but I gotta warm up here, I mean, and you got to realize that too. I mean, I got stuck out there.
> Deputy Anderson: What do you mean, warm up.
> Deimerly: I have to warm up, dude. I have to, I got to make a phone call. I got to wait for Dawn to get here before I can blow.
> Deputy Anderson: No, that's not how it works. You can refuse it if you want, I don't care.
> Deimerly: I don't want to refuse it, but I have to wait for Dawn to get here.
> Deputy Anderson: Dawn's not going to come for one thing. And two, even if she did come, she couldn't come back here. So there's two things. And in addition to that you don't need to wait until somebody shows up that you called, that's not how it works. You must have misunderstood something along the way if you think that's the way it is.
> Deimerly: No, I thought . . . .
> Deputy Anderson: Nowhere in there does it say that.

Deimerly then asked for further explanation of the penalties applicable to his class "A" commercial driver's license if he submitted to the test or if he refused, which Deputy Anderson explained. Deimerly then submitted to the test, which registered a blood alcohol level of .226.

Deimerly was charged with operating while intoxicated, first offense, in violation of Iowa Code section 321J.2. Prior to trial, he filed a motion to suppress in which he asserted "Iowa Code section 804.20 was violated when Deputy Anderson stood mute and failed to properly advise Mr. Deimerly of his right to

see an attorney or family member." Deimerly asked for the suppression of the results of the breath test and the suppression of all statements obtained from him following the violation of section 804.20. Following a hearing, the district court denied the motion. Deimerly proceeded with a bench trial on the minutes of evidence and was convicted. He now appeals.

## II. Scope and Standard of Review.

Our review of the district court's statutory interpretation is for correction of errors at law. *State v. Hellstern*, 856 N.W.2d 355, 360 (Iowa 2014).

## III. Section 804.20 Rights.

On appeal, Deimerly claims the officer violated section 804.20 when the officer denied the existence of the right to an in-person consultation by saying, "[Y]ou don't need to wait until somebody shows up that you called, that's not how it works. You must have misunderstood something along the way if you think that's the way it is." He also claims the officer violated his rights under section 804.20 when the officer did not inform him of his right to consult with an attorney or family member after Deimerly stated he wanted to wait for Dawn to arrive at the sheriff's office.

**A. Error Preservation.** The State argues Deimerly's first claim was not preserved for our review because it was not presented to the district court as part of Deimerly's motion to suppress. We agree. The issue presented to, and addressed in, the court's ruling was whether the deputy was required to advise Deimerly of the scope of the right to consult when Deimerly requested to wait for Dawn to arrive at the station before deciding whether to agree to the breath test. The court found Deimerly's statement that he needed to wait for Dawn "triggered

no additional obligation on Deputy Anderson under Iowa Code section 804.20."

Nowhere did the court consider whether the deputy denied the existence of a right to consult. We thus conclude this claim was not preserved for our review.[1] *See Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002))).

**B. In-Person Consultation.** We turn our attention to the second issue raised: whether Deputy Anderson violated section 804.20 when he did not explain Deimerly's right to an in-person consultation when Deimerly stated he had to wait until Dawn arrived before he would decide whether to take the breath test.

Iowa Code section 804.20 states:

> Any peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both. Such person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney. If a call is made, it shall be made in the presence of the person having custody of the one arrested or restrained. If such person is intoxicated, or a person under eighteen years of age, the call may be made by the person having custody. An attorney shall be permitted to see and consult confidentially with such person alone and in private at the jail or other place of custody without

---

[1] Even if this claim were preserved, we would have rejected it. While Deimerly claims the deputy's words—"[Y]ou don't need to wait until somebody shows up that you called, that's not how it works. You must have misunderstood something along the way if you think that's the way it is"—are a denial of the existence of the right to consult with a family member or attorney, we conclude the deputy was simply explaining to Deimerly that the presence of a third party is not necessary for a detainee to consent to or decline a breath test. We do not interpret the deputy's words to be a denial of the existence of the right to see or consult with a family member or attorney.

unreasonable delay.  A violation of this section shall constitute a simple misdemeanor.

The rights provided under this statute are limited.  *State v. Hicks*, 791 N.W.2d 89, 94 (Iowa 2010).  "[T]he statutory language requiring law enforcement to 'permit' an arrestee to call, consult, and see an attorney does not require law enforcement to *inform* the arrestee of that right, let alone mandate that such a consultation *take place*."  *State v. Lamoreux*, 875 N.W.2d 172, 179 (Iowa 2016).  While the police officer cannot deny the rights exist, the officer does not have an affirmative duty to inform the detainee of his rights unless the detainee invokes his rights.  *Hicks*, 791 N.W.2d at 94.  Thus, our review is a two-step inquiry: (1) did the detainee invoke his rights and (2) was the detainee afforded the rights guaranteed by section 804.20.  *Id.*

**C.  Analysis.**  Our inquiry begins and ends with the first step: whether Deimerly invoked his rights under section 804.20.  "[A]ttempts by defendants to invoke rights under Iowa Code section 804.20 should be broadly construed, but without abandoning the concept that some effort to invoke the statute must be made."  *Lamoreux*, 875 N.W.2d at 179.  If, for example, "the officer turns down the arrestee's phone call request because the request is to call someone not contemplated in the statute, the officer must explain the scope of the statutory right."  *Id.* (quoting *State v. Garrity*, 765 N.W.2d 592, 597 (Iowa 2009)).  However, where there is no confusion about the right, "the duty to clarify the scope" of the right is not triggered.  *Id.* (quoting *Garrity*, 765 N.W.2d at 596).

Here, Deimerly was given the implied consent advisory.  Deimerly then stated he wanted to wait to warm up and make a phone call and to "wait" for

Dawn before he would perform the test. The deputy explained that he did not need to wait for anyone before he made the decision regarding whether or not to submit the test and also explained that Dawn was not coming[2] and could not come back to the Datamaster room. Deimerly contends his request to wait for Dawn triggered the deputy's obligation to explain who he could see and consult with, i.e. attorneys and family members. He claims the failure of the deputy to advise him that he could see and consult with an attorney or family members violated section 804.20.

The unique facts of this case are similar to *State v. Tubbs*, 690 N.W.2d 911, 913 (Iowa 2005), where the defendant asked to have his wife read the consent form. The officers were about to call the defendant's wife, when one officer remembered there was a no-contact order in place between the defendant and his wife. *Tubbs*, 690 N.W.2d at 913. The officers refused to allow the defendant to call his wife, and the defendant did not ask to contact any other family member or attorney. *Id.* The supreme court concluded the officers fulfilled their responsibility under section 804.20. *Id.* at 914. While the defendant was denied the opportunity to speak with his wife because of the no-contact order, he was not denied the opportunity to speak with other family members or an attorney. *Id.* The defendant failed to ask to talk to anyone but his wife. *Id.*

As explained in *Garrity*, the obligation to explain the scope of the statutory rights under section 804.20 is only triggered if there is confusion about that right.

---

[2] Dawn had not been called because of her unlisted number, and Deimerly does not assert a violation of section 804.20 due to the deputy's refusal to call Dawn or provide Dawn's phone number. Before implied consent was invoked, Deimerly was given a chance to call whomever he wanted, and he had his cell phone and a phone book.

765 N.W.2d at 596. Just like in *Tubbs*, here there was no confusion regarding the scope to trigger the duty to clarify the right. *See id.* (noting the critical fact in *Tubbs* was that there was no confusion as to the scope of section 804.20 and Tubbs made no further request to call someone else).

Under the facts of this case, we conclude Deimerly's request to wait for Dawn cannot be reasonably interpreted as an attempt to invoke his rights under section 804.20, nor did it trigger an obligation for the deputy to explain the scope of Diemerly's right to see or consult with an attorney or family member.[3] We affirm the district court's denial of Deimerly's motion to suppress and, thereby, his conviction.

**AFFIRMED.**

---

[3] Even if a violation had occurred, it is likely such violation was harmless. The district court entered judgment against Deimerly for operating while intoxicated under Iowa Code section 321J.2(1)(a) ("While under the influence of an alcoholic beverage or other drug or a combination of such substances") not under section 321J.2(1)(b) ("While having an alcohol concentration of .08 or more"). Thus, the breath test result was not necessary to finding Deimerly guilty. The district court noted, "Deputy Anderson observed the defendant to have the odor of an alcoholic beverage about this person. Deputy Anderson also observed the defendant to have bloodshot, watery eyes and difficulty with unsteady balance when moving." In addition, the court noted Deimerly's vehicle "had been driven into the ditch after going off the road at a T-intersection." "The keys were in the ignition, the headlights and taillights were on, and the audible alarm from the vehicle was going off." Deimerly also admitted to Deputy Anderson he had been at a bachelor party. While the court also noted Deimerly's BAC level, it is clear here the evidence establishes the "under the influence" alternative to operating while intoxicated even without breath test evidence. *See Garrity*, 765 N.W.2d at 597–98 (noting the failure to suppress the defendant's test refusal was harmless error in light of the other evidence of guilt).