# IN THE COURT OF APPEALS OF IOWA

No. 19-1809
Filed March 17, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LUKE DOUGLAS GROAT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Calhoun County, Kurt J. Stoebe,

Judge.


        Luke Groat appeals his convictions for stalking, domestic abuse assault,

and harassment in the third degree.  **AFFIRMED.**


        Ashley Beisch of Johnson Law Office, Ogden, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Mullins, P.J., Greer, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**GAMBLE, Senior Judge.**

Luke Groat appeals from his convictions for stalking, domestic abuse assault, and harassment in the third degree. He argues the district court should have granted his motions for mistrial, he did not receive due process or a fair trial, and certain evidence should not have been admitted. We address each claim in turn and affirm.

**I. Background Facts**

In 2018, Groat and A.M. cohabitated in an intimate relationship. A.M testified that on August 23, Groat put his hands on her neck and chest during an altercation in the home. A.M. testified Groat told her she could not get on her phone, move, or talk. She further testified that when she went to the kitchen, Groat brought out an unloaded rifle and she cut her hand trying to get it away from him. Although she had bruises on her chest, A.M. did not report the incident to the police at that time. A.M. testified that during another argument on August 27, Groat threatened her with a hammer. As A.M. shielded herself with a stepstool, Groat hit the stool with the hammer resulting in a bruise on the back of her head. Groat then threatened to kill her with a rock. Later, Groat came in with a shotgun, loaded it in front of her, cocked it, and started a countdown. She ran from the house to the neighbors and stayed with a friend, but she did not call the police. While she was staying with her friend, A.M. received threatening text messages from Groat on his Facebook account under his alias, "Tim Riggins." So on August 30, she obtained a no-contact order, and the police followed up. On September 2, A.M. returned to her residence with another friend and noticed someone had attempted to break in. The friend observed Groat drive up in his truck, waive a shotgun, and

drive away. The friend called 911. During the police investigation, Groat admitted driving by the residence but denied any threatening behavior. The police found a loaded shotgun in the backseat of Groat's truck and arrested him.

The State charged Groat with seven counts: count I, stalking on September 2; count II, domestic abuse assault while using or displaying a dangerous weapon on September 2; count III, domestic abuse assault while using or displaying a dangerous weapon on August 27; count IV, harassment in the first degree on August 27; count V, false imprisonment on August 27; count VI, domestic abuse assault while using or displaying a dangerous weapon on August 23; and count VII, domestic abuse assault causing bodily injury on August 23. A jury found Groat guilty of stalking under count I; domestic abuse assault as a lesser-included offense under count II; and harassment in the third degree as a lesser-included offense under count IV. The jury found Groat not guilty under counts III, V, VI, and VII. Groat now appeals.

## II. Motions for Mistrial

We begin with Groat's challenge to the district court's ruling on his motions for mistrial.

We review the district court's ruling on motions for mistrial for an abuse of discretion. *See State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). "[W]e only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *Id.* "Grounds or reasons are untenable if they are 'based on an erroneous application of the law or not supported by substantial evidence.'" *Id.* (quoting *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)).

Groat moved for mistrial twice, once during voir dire and again during trial. We first address Groat's motion for mistrial during voir dire.[1] In the context of a discussion of the "power and control wheel" and the "cycle of violence" during jury selection, the prosecutor engaged in the following question and answer with a potential juror:

> [Prosecutor]: Okay. And has anyone ever read any literature or heard on the news how many times someone has to be a recipient of domestic abuse before they report it? Does anybody know? And you are [potential juror].
> [Potential juror]: I read true crime novels.
> [Prosecutor]: And what do they tell you about domestics?
> [Potential juror]: That it typically just keeps going on and on until they either break free or they get killed.

Following this exchange, defense counsel objected and moved for a mistrial. Counsel argued the exchange between the prosecutor and potential juror tainted the jury pool:

> The nature of my objection was that opposing counsel made statements to the jury panel about the cycle of violence and typically how many times domestic violence happens before it's reported. And she elicited testimony from potential jurors that it usually happens multiple times before it's reported.
> The problem with that, your honor, is State's counsel is—has invited the jury to presume that multiple instances of domestic violence, prior bad acts, other wrongs and crimes that my client has not been charges with—[the prosecutor] has invited them to bring that into their potential jury deliberations and has essentially stated to the jury—the potential jury that, by the time the victim reports the domestic violence, we understand that this has likely happened many times before.

---

[1] On appeal, Groat points to several objections made during voir dire. However, he only moved for mistrial with respect to one line of inquiry. So we only consider that line of inquiry when considering whether the district court abused its discretion in denying the motion for mistrial. *See State v. Cornelius*, 293 N.W.2d 267, 269 (Iowa 1980) ("A mistrial motion must be made when the grounds therefor first become apparent. Here the defendant should have asked for a mistrial when the allegedly prejudicial questions was asked." (internal citation omitted)); *State v. Hoosman*, No. 04-1364, 2006 WL 2265413, at *4 (Iowa Ct. App. Aug. 9, 2006).

. . . [B]ecause of this, the jury panel is—essentially has been—has been poisoned at this time.

. . . .

I don't think it was the intent of the State's counsel to bring in prior bad acts, but the effect that the questioning has had on the jury, they have all essentially acknowledged that, yes, usually domestic violence happens many times before it's reported.

It's not—it's not a matter of explaining the—you know, the break in time between potentially the domestic violence being reported once or again, but the inference that's been tendered by the State and that's been essentially agreed to by the jury is that many times people commit domestic violence against someone quite a few times before it's reported. And, hence, that inference that these things must have happened many times before they reported has already been confirmed by the jury.

And you couple that with this idea of the cycle of violence, which is you're essentially saying there's a cycle, the stuff happens again and again and again and again and we just had this one incident reported, but, you know, it's happened before and there's a cycle going around.

And the jury hasn't heard any evidence at all. Maybe some of this would have been proper as rebuttal evidence, but this is jury selection. I mean they're essentially being indoctrinated that domestic violence always happens multiple times before it's reported once so this defendant must have beat her multiple times before it was reported. That's the inference that's before this jury, Judge. And I see no way to remove that inference, which is why I'm asking for a mistrial.

The district court denied the motion for mistrial and voir dire continued.

On appeal, Groat renews his argument that the exchange between the prosecutor and potential juror tainted the jury pool because the jury could infer Groat had committed prior acts of domestic violence, which were never reported but nonetheless occurred. Moreover, Groat suggests the prosecutor was using voir dire to impermissibly educate the potential jurors on the law and speak on the merits of the case. *See State v. Windsor*, 316 N.W.2d 684, 687 (Iowa 1982) ("Voir dire is not designed for educating jurors on the law or for persuading them on the merits of the case."). The State responds by arguing the prosecutor's inquiry was

permissible because the prosecutor was inquiring about what the potential jurors already knew about domestic violence—what information or preconceptions the potential jurors brought with them—rather than educating them, speaking on the merits of the case, or inviting the potential jurors to infer Groat committed prior bad acts. *Cf. State v. Richards*, No. 18-0522, 2019 WL 1057886, at *7 (Iowa Ct. App. Mar. 6, 2019) ("Domestic violence is never a single isolated incident. Rather, domestic violence is a pattern of behavior, with each episode connected to the others." (quoting *State v. Taylor*, 689 N.W.2d 116, 128 n.6 (Iowa 2004))).

The prosecutor's questioning regarding the potential jurors' knowledge of the cycle of violence and power and control dynamic touched on topics typically presented through expert witnesses in domestic abuse cases. *See State v. Little*, No. 08-1125, 2010 WL 786011, at *17 (Iowa Ct. App. Mar. 10, 2010) (noting courts permit expert testimony regarding the cycle of violence and power and control dynamic in domestic violence cases). But the prosecutor did not plan on the introduction of expert testimony in this case. A prosecutor would exceed the proper scope of voir dire if she attempted to indoctrinate potential jurors regarding these concepts; particularly if there would be no expert testimony to back it up during the trial. *See Windsor*, 316 N.W.2d at 687. However, the prosecutor's questions here were of a general nature designed to determine if potential jurors had heard of these concepts and whether they had any predispositions. Ultimately, we find the prosecutor's questions illuminated the potential jurors' existing understanding of these dimensions of domestic abuse. Doing so informed the parties of the depth and breadth of the potential jurors' understanding of domestic violence. Therefore, we agree with the State's characterization of the

prosecutor's inquiry as probing the potential jurors about their existing knowledge and preconceptions about delayed reporting of domestic abuse rather than improperly indoctrinating them.

The parties' understanding of potential jurors' existing preconceptions or knowledge about relevant issues is critical in the jury selection process because it allows the parties to intelligently exercise their preemptory challenges. *See State v. Tubbs*, 690 N.W.2d 911, 915 (Iowa 2005). And we afford the parties wide latitude when examining potential jurors for the purpose of preemptory challenges. *See id.* Here, the State charged Groat with domestic violence, and A.M. alleged Groat either threatened or physically assaulted her multiple times, but she did not immediately report it to law enforcement. So, the issue of delayed reporting of domestic violence was relevant to the case. This made the potential jurors' existing knowledge and preconceptions about delayed reporting and the many facets of domestic violence relevant to the parties for purposes of exercising their preemptory challenges. *Cf. id.* Moreover, the prosecutor's questions did not refer to prior bad acts as Groat argues. Instead, the prosecutor inquiries probed the potential jurors on their understanding that "[d]omestic violence is never a single isolated incident. Rather, domestic violence is a pattern of behavior, with each episode connected to the others." *See Richards*, 2019 WL 1057886, at *7 (quoting Taylor, 689 N.W.2d at 128 n.6). And that understanding was also relevant to the parties when exercising preemptory challenges. *Cf. Tubbs*, 690 N.W.2d at 915. So we conclude the inquiry was permissible and the district court did not abuse its discretion in denying the motion for mistrial.

Groat's second motion for mistrial relates to the prosecution's cross-examination of him. He objected and moved for a mistrial when the prosecutor asked, "So you're telling us this now, but you didn't say anything when your attorney asked you a question about what happened after [A.M.] left?" Defense counsel argued the prosecutor

> implied that [Groat] has some kind of burden to prove something in this case through her line of questioning, implying that, if this thing happened, why didn't you say it when your attorney asked it, as if my client has something to prove. And he doesn't. He doesn't have to prove anything.

The district court sustained the objection, instructed the jury to disregard Groat's answer to the question, and reminded the jury that Groat "is not under any burden to prove anything in this case." But it denied the motion for mistrial.

On appeal, Groat merely notes the court's denial of the motion for mistrial. He does not develop an argument advocating why the district court abused its discretion in denying the motion for mistrial. So his argument is not sufficiently developed for our review, and we deem the issue waived. *See State v. Vaughan*, 859 N.W.2d 492, 503 (Iowa 2015) (holding failure to make an argument in support of an issue constitutes waiver); *State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (noting a "passing reference" in a brief constitutes waiver); *cf.* Iowa R. App. 6.903(2)(g)(3) (requiring an appellant's brief contain "[a]n argument section containing the appellant's contentions and the reasons for them with citations to the authorities relied on" and warning that "[f]ailure to cite authority in support of an issue may be deemed waiver of that issue").

**III. Constitutional Violations During Voir Dire**

Next, Groat alleges the voir dire process tainted the jury, violating his right to due process and a fair trial guaranteed by the United States Constitution and the Iowa Constitution. "We review constitutional claims de novo." *Plain*, 898 N.W.2d at 810. However, before we may consider the merits of Groat's claim, we must consider whether it is preserved for our review.

Groat never asserted a constitutional violation under either constitution before the district court. "[I]ssues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. Derby*, 800 N.W.2d 52, 60 (Iowa 2011) (quoting *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008)). That is because "[i]t is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). We recognize if a "court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012) (citation omitted). But nothing in the record suggests the court considered and necessarily ruled on the constitutional claim Groat now asserts.

Yet in his reply brief, Groat argues he successfully preserved error through his numerous objections and motion for mistrial during voir dire because the constitutional argument he now brings "is or should not be a surprise" in light of his objections. We disagree. Simply because Groat's claim is not entirely unanticipated does not preserve the claim for our review. This court generally serves as a court of error correction. *See* Iowa Code § 602.5103 (2018) (stating

the court of appeals "constitutes a court for the correction of errors at law"); *State v. Gross*, No. 18-0048, 2018 WL 6120052, at *1 (Iowa Ct. App. Nov. 21, 2018) (noting the court of appeals does not decide issues not previously presented the district court but recognizing an exception for ineffective-assistance claims). So it does not matter whether Groat's appellate claim comes as a surprise; what matters is whether there is something for us to review. And without any ruling from the district court on Groat's constitutional claims, there is nothing for us to correct or consider. We conclude Groat failed to preserve error on his constitutional claim.

## IV. Admission of Text Messages

Finally, we turn to Groat's claim that the district court should not have admitted a copy of his text messages with A.M. because they were not sufficiently authenticated and contained hearsay.

Generally we review the admission of evidence for an abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). But "we review hearsay rulings for the correction of legal error." *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020).

We first turn to the issue of authentication. "Authentication or identification represents one component in the relevancy determination with regard to certain types of evidence, such as the contents of a document, telephone call or other exhibits." Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.901:0 (Nov. 2020 update) (footnote omitted). When authentication is required, "it is a condition precedent to admissibility." *Id.* "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Iowa R.

Evid. 5.901(a). That requirement may be satisfied by "[t]estimony that an item is what it is claimed to be." Iowa R. Evid. 5.901(b)(1). Of course, the testifying witness must have "personal knowledge of the matter." *See* Iowa R. Evid. 5.602. The authentication burden is not high, it need only allow a reasonable jury to find the evidence is authentic. *See United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014) (discussing Federal Rule of Evidence 901).

Here, the State sought to admit images of a phone displaying four pages of text messages between A.M. and someone identified as "Tim Riggins," whom the State asserted was actually Groat.

A.M., Groat's former live-in paramour, testified that Groat identified himself as Tim Riggins on his Facebook profile. And she testified when Groat texted her, his name would come up as Tim Riggins on her phone. She then identified the phone pictured in the exhibit displaying the text exchange with Tim Riggins as her phone and confirmed the text messages were from Groat. A.M.'s testimony sufficiently authenticated the text messages as being from Groat. *See State v. Goodwin*, No. 18-1822, 2020 WL 1551149, at *4–5 (Iowa Ct. App. Apr. 1, 2020) (finding the district court did not abuse its discretion when determining a witness's testimony identifying the defendant as a participant in a text message exchange sufficiently authenticated the text conversation even though the related phone number was not linked to the defendant). Moreover, the content of the messages—which discussed bills, where A.M. worked, a floor sander, a dog, and a cat—also support A.M.'s authentication of the text messages. *See id.* So we conclude the district court did not abuse its discretion in finding the evidence authenticated.

We move to Groat's hearsay challenge. He asserts the contents of the text messages were inadmissible hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted. Iowa R. Evid. 5.801(c). Hearsay is inadmissible unless an exception applies. Iowa R. Evid. 5.802; *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006).

But we agree with the State that the content of the text messages is not hearsay, so it does not need to satisfy an exception. First, the text messages were not offered "to prove the truth of the matter asserted" in the content of messages. *See* Iowa R. Evid. 5.801(c)(2). Rather, they were offered to explain A.M.'s responsive conduct—why she was afraid of Groat and would not return home before the imposition of a no-contact order. *See State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990) ("When an out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay."); *State v. Amodeo*, No. 01-1758, 2002 WL 31425424, at *1 (Iowa Ct. App. Oct. 30, 2002). Second, the content of the text messages is not hearsay because the contents are statements made by a party opponent. *See* Iowa R. Evid. 5.801(d)(2)(A). Groat argues the content of the text messages cannot be considered non-hearsay statements made by a party opponent and cites his challenge to the authentication of the text messages to question if he sent them. But "[b]ecause we find there as sufficient authentication to link the text messages to [Groat], the statements are non-hearsay, as an admission by a party opponent, and [Groat's] hearsay argument fails." *See Goodwin*, 2020 WL 1551149, at *5 n.6.

**V. Conclusion**

The district court did not abuse its discretion in denying Groat's motion for mistrial during voir dire.  His challenge to the court's ruling on his second motion for mistrial is waived.  Because he did not raise his constitutional claims in the district court, they are not preserved for our review.  And district court properly admitted the text message exhibit because A.M. authenticated the exhibit and the content of the messages was not hearsay.

**AFFIRMED.**