# IN THE COURT OF APPEALS OF IOWA

————————

No. 24-1378
Filed February 11, 2026

————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Peter Douglas Vannausdle,**
Defendant–Appellant.

————————

Appeal from the Iowa District Court for Polk County,
The Honorable Gregory D. Brandt, Judge.

————————

**AFFIRMED**

————————

R.A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Linda J. Hines (until withdrawal) and
Sheryl Soich, Assistant Attorneys General, attorneys for appellee.

————————

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

Peter Vannausdle appeals his conviction for operating while intoxicated after a conditional guilty plea, challenging only the denial of his motion to suppress. He argues that the district court erred in failing to suppress statements about his drinking that he made during the traffic stop because the deputy sheriff did not first advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). And he argues that the court erred in failing to suppress evidence of his refusal to submit to chemical testing because the deputy violated his rights to see his father in person and to call an attorney under Iowa Code section 804.20 (2023).

None of Vannausdle's claims of error succeed. Vannausdle was not in custody during the deputy's traffic-stop questioning, so *Miranda*'s protections did not apply. Neither did the deputy hinder Vannausdle's exercise of his rights under section 804.20. Vannausdle made multiple phone calls to family members, and the deputy's response to questioning during one of those calls that Vannausdle's father would have to wait to take Vannausdle home did not violate section 804.20. So too did Vannausdle have ample chance to call an attorney, and the deputy had no duty to take further action to facilitate a call because of Vannausdle's comments about an attorney.

## I.     Background Facts and Proceedings

Early one morning in December 2023, a deputy sheriff stopped Vannausdle for speeding. At the driver-side window, the deputy reviewed Vannausdle's license and registration and explained why he had stopped him. While doing so, the deputy smelled the odor of alcohol coming from Vannausdle and observed that he slurred his speech, moved his hands slower than normal, and had bloodshot and watery eyes.

So about thirty seconds into the stop, the deputy asked where Vannausdle and his passenger—who was Vannausdle's ex-wife—were coming from. They told him they were returning home from a holiday party. The deputy then asked Vannausdle if he had a few drinks while there. Vannausdle responded that he had a few drinks "a long time ago." The deputy sought clarification, asking "how many did you have and what time did you start?" After reflecting on the events of his evening, Vannausdle responded, "I didn't have anything for a couple of hours probably." The deputy then confirmed that the last time Vannausdle drank was "a couple of hours ago." And Vannausdle agreed.

About three minutes after first approaching the vehicle, the deputy asked Vannausdle to step outside to complete field sobriety testing. But Vannausdle eventually declined to complete any field sobriety tests. And when the deputy offered to administer a preliminary breath test, he declined that too.

The deputy then arrested Vannausdle and transported him to the county jail. Once at the jail, the deputy read the implied consent advisory to Vannausdle. *See* Iowa Code § 321J.8. The deputy also read section 804.20 aloud to Vannausdle while Vannausdle followed along with his own copy. Indeed, as the deputy read the part of the statute saying that it applies to "any person arrested," Vannausdle interrupted to ask whether he was arrested and the deputy confirmed that he was. Then they read section 321J.11 together. While the deputy read the advisories, Vannausdle's cell phone was sitting in front of Vannausdle on the desk.

Once the deputy finished, he told Vannausdle he could make any phone calls he wanted as long as they were on speakerphone. Vannausdle asked whether an attorney call could be private, and the deputy said it could.

Vannausdle then made three calls with his cell phone. First, he tried his ex-wife, but the call went to voicemail. As he told the deputy who he was calling, Vannausdle explained that he would "tell her to get us some—well we have some attorneys."

Second, Vannausdle called his parents, and his mother answered. As he told her that he had tried calling his ex-wife, his mother interrupted, "No, Dad's coming down to get you." Vannausdle responded, "I know but I want an attorney 'cause I'm gonna file some—never mind we'll talk about that later. But make sure—I'll talk to [his ex-wife] about the last attorney I had." Vannausdle then asked his mother, "Dad is coming down?" and turned to the deputy to ask, "Am I getting bailed out today?" The mother also asked, "So he can come now?" The deputy answered, "He probably shouldn't come yet, I mean he can, he can just sit and wait out front." Vannausdle followed up, "Like an hour? What are you thinking? Your best guess? An hour and a half?" The deputy responded, "Probably." Vannausdle directed his attention back to the phone, telling his mother, "Like an hour and a half or so," to which his mother responded, "Okay." Vannausdle wrapped up the call, telling his mother, "Alright, then we'll deal with this shit tomorrow or Monday. Thank you! Love you. Bye."

After hanging up, Vannausdle commented that he was "kind of excited to fucking go against the sheriff's department with a lawyer in today's world." After waiting and chatting with the deputy for a while, Vannausdle asked if he could try calling his ex-wife again. The deputy responded, "Yeah, you got plenty of time to make calls. You can do what you need to do." So Vannausdle called her, and again the call went to voicemail.

While the deputy worked at his computer for another seven minutes or so, Vannausdle kept talking. Finally, about sixteen minutes after reading

section 804.20 together, the deputy asked, "Do you want to make any more phone calls? You have the right to do that. So I want to make sure that you have your full rights." Vannausdle declined to make any more calls. And he ultimately decided to refuse to submit to a chemical breath test.

The State charged Vannausdle with operating while intoxicated, first offense. *See* Iowa Code § 321J.2. Vannausdle soon moved to suppress, among other evidence, his statements to the deputy during the traffic stop and his refusal to submit to chemical testing. He argued that his *Miranda* rights were violated when the deputy questioned him during the traffic stop about his drinking without first advising him of those rights. And he argued that the deputy violated section 804.20 by preventing him from seeing his father in person and failing to facilitate a call to a lawyer before he decided to refuse chemical testing.

After a suppression hearing, the district court denied the motion to suppress. The court reasoned that "the roadside investigation does not rise to the level of custodial interrogation," and thus rejected Vannausdle's *Miranda* challenge. The court also rejected his arguments based on section 804.20, finding that he "was read the 804.20 advisory and had the opportunity to call anyone that he wished to call, and he exercised that right by contacting his mother and attempting to contact his ex-wife." The court reasoned that although Vannausdle and his mother talked "about his father coming down to pick him up," "[a]t no time did [he] indicate that he actually wanted to speak with his father prior to making any decisions concerning implied consent." And it found that Vannausdle never said he wanted to talk to an attorney at that time, reasoning that "[t]he fact that a Defendant says the word attorney does not require any further explanation by the Deputy."

Vannausdle unsuccessfully moved for reconsideration. And he then entered a conditional guilty plea—which the district court accepted—reserving the right to challenge the court's denial of his motion to suppress. Vannausdle now appeals, challenging only that denial.[1]

## II.   *Miranda* Violation

Vannausdle first argues that the district court erred in failing to suppress statements about his drinking that he made during the traffic stop because the deputy did not first advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The State responds that the district court properly concluded that Vannausdle was not in custody while being questioned by the deputy during the traffic stop, so *Miranda* did not apply. Our review of this part of the district court's suppression ruling is de novo. *See State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015).

"[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way," law enforcement officers must give *Miranda* warnings to the individual before engaging in custodial interrogation. *Miranda*, 384 U.S. at 478–79. But a routine traffic stop does not place a person in custody for purposes of *Miranda*. *See Berkemer v. McCarty*, 468 U.S. 420, 436–40 (1984); *State v. Scott*, 518 N.W.2d 347, 350 (Iowa 1994). Neither does modest questioning to investigate possible intoxication or administering field sobriety tests convert a traffic stop

---

[1] We have jurisdiction over a conditional guilty plea reserving an issue for appeal only when "entered by the court with the consent of the prosecuting attorney and the defendant or the defendant's counsel" and "when the appellate adjudication of the reserved issue is in the interest of justice." Iowa Code § 814.6(3). Because Vannausdle's appeal of the suppression ruling "is the same issue reserved by the conditional guilty plea, and success on appeal of that issue would give [him] some relief," the interest-of-justice jurisdictional threshold is satisfied. *State v. Scullark*, 23 N.W.3d 49, 53 (Iowa 2025).

originally for another purpose into a custodial interrogation. *See Berkemer*, 468 U.S. at 441–42; *In re S.C.S.*, 454 N.W.2d 810, 813–14 (Iowa 1990). Only when the stopped motorist "is subjected to treatment that renders him 'in custody' for practical purposes"—when his "freedom of action is curtailed to a degree associated with formal arrest"—does *Miranda* apply. *Berkemer*, 468 U.S. at 440 (cleaned up).

Vannausdle contends that he was subjected to custodial interrogation when the deputy began asking him questions about when he last drank alcohol and how much he drank during the first few minutes of the traffic stop. But that is not enough to turn a traffic stop into a custodial interrogation. *See Berkemer*, 468 U.S. at 441–42; *S.C.S.*, 454 N.W.2d at 813–14. Indeed, we see little daylight between the facts here and prior cases where similar investigations were held not to be custodial interrogation. We thus reject Vannausdle's argument that he was in custody for purposes of *Miranda* during the deputy's questioning. The district court correctly denied the motion to suppress on this basis.

## III.    Iowa Code Section 804.20

Vannausdle next argues that the district court erred in failing to suppress the evidence of his refusal of a chemical test because the deputy twice violated Iowa Code section 804.20 after his arrest and transport to the jail. First, he contends that the deputy violated his right to see a family member in person with his answers to questions about whether Vannausdle's father could come pick him up. Second, he claims that the deputy violated his right to call an attorney by failing to do more to facilitate a call with an attorney after Vannausdle referred to an attorney a few times while making phone calls. We review this part of the district court's suppression ruling for correction of legal error. *See State v. Clark*, 21 N.W.3d 429, 435 (Iowa 2025).

So we will affirm "[i]f the district court properly applied the law and there is substantial evidence to support its findings of fact." *Id.* (cleaned up).

As relevant here, section 804.20 requires a "peace officer . . . having custody of any person arrested" to "permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both." Iowa Code § 804.20. The statute also dictates that "[s]uch person shall be permitted to make a reasonable number of telephone calls as may be required to secure an attorney." *Id.* Section 804.20 thus "creates a limited right that requires a law enforcement officer to afford a suspect a reasonable opportunity to contact an attorney or family member when requested." *Clark*, 21 N.W.3d at 435.

But the statute is not "self-enforcing." *State v. Lamoreux*, 875 N.W.2d 172, 179 (Iowa 2016) ("Something does not have to be automatically *provided* just because the statute says it must be 'permitted.'"). So when a detainee does not make a request to talk to an attorney or family member, he is "not denied the opportunity" to do so, and the statute is not violated. *State v. Tubbs*, 690 N.W.2d 911, 914 (Iowa 2005). Still, when a detainee *does* invoke the statute by making a request to call or meet with an attorney or family member, a law enforcement officer cannot prevent the exercise of that right. *See State v. Lindaman*, ___ N.W.3d ___, ___, 2025 WL 3718817, at *13 (Iowa 2025). "Nor may officers play semantics by telling a detainee she can make a phone call while withholding or not providing any means to execute the call." *Id.*

*Right to See His Father.* Vannausdle first claims that the deputy violated his right to see his father under section 804.20 by "misrepresent[ing] and mislead[ing] [him] to believe his father could not see and consult with him

8

prior to the testing decision [and] would have to wait over an hour to an hour and half, before his father could see him." But the district court correctly concluded that Vannausdle never invoked his right to see his father in person, so the deputy did not violate his statutory duty to permit him to do so. *See Tubbs*, 690 N.W.2d at 914. And understood in the context of the questions asked by Vannausdle and his mother, the deputy's statements did not misrepresent or mislead Vannausdle about his rights under section 804.20.

To be sure, the deputy did say that Vannausdle's father "probably shouldn't come yet, I mean he can, he can just sit and wait out front." But this was after Vannausdle's mother told Vannausdle that "Dad's coming down to get you," and in response to follow-up questions from Vannausdle ("Am I getting bailed out today?") and his mother ("So he can come now?"). The deputy's response was merely accurately answering those questions to tell Vannausdle that he could not yet be picked up. Vannausdle understood the response the same way because he immediately peppered the deputy with questions seeking an estimate of when he would be free to go: "Like an hour? What are you thinking? Your best guess? An hour and a half?" After the deputy agreed with those estimates, answering "probably," Vannausdle told his mother that his dad should come in "like an hour and a half or so."

Throughout the exchange Vannausdle never gave any indication that he wanted to meet with or talk to his father before being picked up.[2] After all, he was on the phone with his mother at the time—and had been muttering as he placed the call to his parents about whether his mother or father would

---

[2] Contrary to Vannausdle's framing of the district court's similar reasoning, this does not "graft[] a new requirement that the Defendant must tell the officer why he wants to see his father prior to the testing decision." The problem for Vannausdle is that he never asked to see his father at all—he merely asked when he would be free to go home with his father. That distinction goes to the heart of whether he ever invoked section 804.20.

answer first—so he could have easily asked to talk to his father right then. The deputy had already read section 804.20 to Vannausdle—he thus knew that he had the right to see his father in person if he wanted to. And nothing about the discussion of being picked up would give Vannausdle any basis to think that he could no longer exercise that right if he chose to do so. The deputy did not violate Vannausdle's section 804.20 right to see his father.

*Right to Call an Attorney.* Vannausdle's second claim of a section 804.20 violation similarly fails because he never invoked his right to call an attorney. Aside from a brief question about confidentiality, his comments related to attorneys were all forward-looking—not requests to talk while at the jail: (1) telling the deputy and then his mother that he wanted to talk to his ex-wife about hiring an attorney and specifically, "the last attorney [he] had"; (2) starting to tell his mother he wanted an attorney because he was going to file something, before cutting off and saying "we'll talk about that later" and later telling her "we'll deal with this shit tomorrow or Monday"; and (3) commenting to the deputy that he was "kind of excited to fucking go against the sheriff's department with a lawyer in today's world." Because Vannausdle did not seek to call or meet with an attorney, the deputy did not violate any duty under section 804.20.

But even if those mere mentions of an attorney were enough to invoke Vannausdle's right to call an attorney, the deputy afforded him a reasonable opportunity to do so. After reading him section 804.20, the deputy gave him roughly fifteen minutes to make calls from his cell phone while the deputy was working at his computer. Vannausdle did in fact make other calls. And the deputy repeatedly reminded him he was free to make any calls he wanted. And after seven minutes of waiting for him to make more calls, the deputy double-checked again: "Do you want to make any more phone calls? You

have the right to do that. So I want to make sure that you have your full rights." This satisfied any duty under section 804.20. *See Clark*, 21 N.W.3d at 437 ("The deputies only needed to *permit* [the detainee] to have a reasonable opportunity to make a phone call, which they did by telling her multiple times that she could contact her attorney and by giving her access to her own phone."); *Lindaman*, 2025 WL 3718817, at *13; *id.* at *15 (Oxley, J., concurring) (agreeing that section 804.20 was not violated where the detainee "had ample opportunity to make a call while the officers were attending to other matters" and "simply chose not to").[3]

Bottom line, Vannausdle was informed of his section 804.20 rights, he exercised them by placing three calls, the deputy repeatedly told him he could make any calls he needed and gave him much time to do so, and he never sought to see his father in person or to call a lawyer. So the district court correctly determined that the deputy did not violate section 804.20. And thus, it correctly denied Vannausdle's motion to suppress on this basis.

**AFFIRMED.**

---

[3] In *Lindaman*, an equally divided court, with one justice not participating, split as to whether section 804.20 imposes any duty on a law enforcement officer to facilitate the right to call an attorney or family member. *Contrast Lindaman*, 2025 WL 3718817, at *13 ("While [section 804.20] imposes duties on peace officers to permit a detained person to make a phone call without unnecessary delay upon arrival at the detention center, it nowhere imposes a duty on peace officers to facilitate the phone call."), *with id.* at *15 (Oxley, J., concurring) ("[W]e need not—and should not—call into question [a prior] holding that an officer may be required, in certain circumstances to take an active role in permitting a detainee to exercise his statutory right to call his attorney or a family member."). But all the justices agreed that whatever duty might exist, it was not implicated by the facts there. So too here.